## THE ALBANY MUTUAL BUILDING ASSOCIATION v. THE CITY OF LARAMIE.

BUILDING ASSOCIATIONS—TAXATION—APPEAL AND ERROR—STATUTES.

1. The liability of a mutual building association to its shareholders to distribute to them at maturity of the stock the value thereof out of the assets of the association is not a debt within the meaning of the statute authorizing a deduction from the gross amount of moneys and credits otherwise taxable of bona fide debts owing by the taxpayer.

2. Building associations were not excepted from the provisions of the acts of 1891 and 1895 relating to the taxation of corporations. The former applied generally to all incorporated companies and associations, and the latter to domestic corporations, and each included, therefore, a building association incorporated under the act of 1890.

3. In the absence of a constitutional or valid statutory provision exempting it from taxation, there is nothing in the nature of a building and loan association to render its property nontaxable.

4. The credits of a mutual building and loan association represented by loans to its members and the securities therefor are assets of the association and taxable as credits.

5. The plaintiff in error, a mutual building and loan association, was assessed in 1897 by the City of Laramie in the sum of $20,000 on moneys and credits. It had made loans to members during the preceding year to the amount of $23,600, and its annual report showed that it had bills receivable amounting to $137,800, and that its net earnings amounted to $42,293.74. The

bills receivable consisted of mortgages and other securities for loans made to shareholders in the association. *Held,* that such credits were taxable assets of the association.

6. Conflicting evidence will receive that construction by the Appellate Court which will sustain the judgment, such court assuming that the trial court took that view of it.

7. The charter of the City of Laramie provided that the Board of Trustees and the assessor should constitute a Board of Equalization for equalizing assessments for taxation, and that such board should hold a special meeting within five days after the return of the assessment roll; that the clerk of the Board of Trustees should notify the persons whose assessments were raised, and that they might appear before the Board of Equalization at their next regular meeting, and upon satisfactory evidence the board might abate unjust assessments. There was no provision for a regular meeting other than that for the regular meetings of the Board of Trustees. *Held,* that the statute must be construed as referring to the next regular meeting of the corporate board.

8. The Board of Equalization having authority to remain in session for a period of fifteen days, exclusive of Sundays, and prior to the expiration of such period having added the contested item to the assessment, the assessment will not be held defective, because without written notice of the addition, but with actual knowledge thereof, the representative of the taxpayer appeared before the board after said period and protested, it appearing that the board did nothing except to refuse to disturb the assessment, and the meeting was held by agreement, and the matter was argued by the representative of the taxpayer and the City Attorney.

9. A suit may be maintained by a municipal corporation for the collection of delinquent taxes where the charter provides that taxes may be assessed, levied and collected as may be provided by ordinance, and an ordinance has been enacted providing for collection by suit.

10. One who furnishes to the City Assessor a list of his property for taxation and takes the required oath is not liable in case of the omission of property that is taxable to the penalty of two hundred dollars imposed by statute upon any person "who shall refuse to assist in making out a list of his property, or of any property of which he is required by law to assist in listing."

[Decided August 16, 1901.]

ERROR to the District Court of Albany County, HON. CHARLES W. BRAMEL, Judge.

Action by the City of Laramie against the Albany Mutual Building Association to recover a tax levied against the property of defendant, and for the recovery of a penalty of two hundred dollars for failing to list property for taxation. Judgment for plaintiff, and defendant prosecuted error. The facts are stated in the opinion.

*J. H. Symons* and *N. E. Corthell,* for plaintiff in error.

The statute makes a radical distinction between mutual associations and benefit associations. The mutual association is not taxed, but its members are taxed on their unredeemed or unborrowed shares. (Laws 1890, Ch. 29.) This rule is a just recognition of a real distinction inherent in the subject. (Safety Bldg. Loan Co. v. Ecklar (Ky.), 50 S. W., 50; Maynard v. Granite State Prov. Asso., 92 Fed., 440; Mechanics, etc., B. Asso. v. Meriden Agency, 24 Conn, 159; St. Joseph, etc., Asso. v. Thompson, 19 Kan., 321; Williar v. Baltimore, etc., Asso., 45 Md., 546.) In the mutual society there can be none but mutual and reciprocal relations. All the funds in hand at any time must be applied in satisfaction of the stock of the association and in no other way. The trustees may not loan it to outsiders. They are limited to passing on the securities offered, and may not control the securities except to foreclose them if dues and interest be not paid. When the stock matures there is *ipso facto* a dissolution of the obligation. None of the three concurrent conditions essential to taxation exists in the case of this association. *a.* The association has no property interest or right in the nature of property in the securities. *b.* The association has no surplus of credits or debts. *c.* The only interest in the nature of surplus credits or property is that of the individual shareholder who has paid into the association and has not received his money out; he is the owner against whom the law requires the assessment of property to be made. The right of property is the thing taxable, and that "consists in the free use, enjoyment and disposal of all one's acquisitions, without any control or diminution save only by the laws of the

land." (1 Black. Com., 138; Rigney v. Chicago, 102 Ill., 77.)

If the mortgages were real debts due the association they would still not be taxable as moneys and credits, for the reason that the association owes to its shareholders as much as is due from them. Its debts always equals its credits. Whether the loan to members is considered from the standpoint of the tax laws, the usury laws, the rules for the interpretation of contracts, or the language of the contracts themselves, the courts agree that it is not a loan in any proper sense, but that the borrower occupies the relation both of debtor and creditor; that his stock is a credit and his debt a dividend, representing simply his ultimate share in partnership funds. (Harn v. Woodard, 151 Ind., 132; Ohio V. B. & L. Asso. v. Court, 42 W. V., 818; Kansas City v. Mercantile Mut. B. & L. Asso., 145 Mo., 50; Silver v. Barnes, 6 Bing. New Cas., 180; Johnson v. Potomas B. Asso., 13 Fed. Cas., 784; Am. Homestead Co. v. Linigan, 46 La. Ann., 1118; Delano v. Wild, 88 Mass., 5; Massey v. Citizens' B. & S. Asso., 22 Kan., 636; Robertson v. Homestead Asso., 10 Md., 397; Bertche v. Eq. L. & Inv. Asso., 147 Mo., 343; Clarksville B. & L. Asso. v. Stephens, 36 N. J. Eq., 354; Mich. B. &. L. Asso. v. McDevitt, 77 Mich., 1; Reeve v. Ladies' B. Asso., 56 Ark., 335; Pabst v. Economic B. Asso., 1 McArthur, 385; Cook v. Eq. B. & L. Asso., 104 Ga., 814; Hawkins v. Americus, etc., Asso., 96 Ga., 206; Eq. Loan & Inv. Asso. v. Peed (Ind.), 52 N. E., 203; Sec. Sav. & L. Asso. v. Elbert (Ind.), 54 N. E., 753; Fidelity Sav. Asso. v. Shea (Ida.), 55 Pac., 1022; Faust v. Twenty-third Ger. B. Asso., 84 Md., 186; Robertson v. Asso., 10 Md., 397; Rice's Case, 50 Md., 312.)

The statute of 1890 has not been repealed. The act of 1890-91 is a re-enactment of Sec. 3791, R. S., which stood consistently with the Building Association Act, the obvious purpose being to remove uncertainty as to whether corporate stocks in general should be assessed to the company or stockholder, to preclude any implication in favor of double taxation, or in favor of the exemption of foreign corporations, and to make proper allowance for capital invested in real

estate outside the State. The clause relating to assessment of credits was left unchanged. The act of 1895 superseded the first clause of the act of 1891 and simplified the situation by placing corporations upon the same footing with individuals. Both acts were general acts referring to corporations essentially different in their nature from the plaintiff in error. The Legislature did not have building associations in view or there would have been an express repeal. To operate as a repealing statute the implication must be a necessary one. If both can stand they must be allowed to do so. (Standard Cattle Co. v. Baird, 8 Wyo., 144; Syndicate Imp. Co. v. Bradley, 7 Wyo., 228; State v. Owen, id., 84; Board v. Chaplin, 5 id., 74.)

The act of 1897 repealed the act of 1890 only so far as it related to the formation, regulation and conduct of associations. But the plaintiff in error did not file notice of its election to bring itself under the new law until after the date of the assessment in question.

To maintain the suit there must have been an actual valid assessment of specific property in the mode provided by law. (Cooley on Taxation, 248; Un. Pac. R. Co. v. Donnellan, 2 Wyo., 478.) There was not a valid assessment in this case. (R. S., 223, 224.) After the second Monday in June the assessor could not lawfully add to the assessment roll. (Cooley on Taxation, 415; People v. Forrest, 96 N. Y., 544.) And at no time could he assess property not returned against a taxpayer who had submitted a list. (R. S., 225; Cooley on Taxation, 357.) The board was *functus officio* on July 3d, and hence its sessions after that time were not authorized. The board was illegally constituted. The Mayor participated in the equalization unlawfully. The charter must control. It cannot be changed by ordinance. (Cooley on Taxation, 366, 415, 282; 2 Dillon on Mun. Corp., 781; Dwyer v. Hackworth, 57 Tex., 245.) There is nothing on the roll to indicate whether the figures "20000" mean integral moneys and credits, or so many dollars, or cents. (Bradley v. Seaman, 30 Cal., 610; Hurlbut v.

Butenop, 27 id., 57; Woods v. Freeman, 1 Wall., 398; Tilton v. Or. Cent. M. R. Co., 3 Saw., 22.) The city failed to show any tax warrant for the collection of the alleged tax. Without a tax list and warrant there is no authority to take any proceedings for collection. (Cooley on Taxation, 424.) There is no statute authorizing suit, and without it suit will not lie. (Fairbault v. Misener, 20 Minn., 396; Cooley, 435.)

The statute prescribing a penalty is to be strictly construed. (People v. Dolan, 5 Wyo., 245; Turner v. Sawyer, 150 U. S., 578; Bolles v. Outing Co., 77 Fed., 966.) The plaintiff in error is not liable for the penalty even if its property should be held to be taxable. It did not refuse to assist in listing within the meaning of the statute. Neither did it refuse to take the oath. A different penaly is inflicted for omissions from the list.

*C. P. Arnold,* for defendant in error.

The law concludes the contention that the assessor has no right to make out a list when the taxpayer has made one, however faulty. (R. S., Sec. 1351.) The taxpayer may not list a fraction of his property and thereby tie the hands of the assessor. The obligation upon him is to make a full and complete inventory. (R. S., Sec. 1352.) The assessor listed the property in question on May 19, within the time allowed by statute. There is no evidence rebutting the presumption of the regularity and validity of the official acts of the assessor. (10 Ency. Law, 43; Board v. Searight, 3 Wyo., 777.) The fact that the oath of the assessor to the roll was made June 22 is of no consequence. There is no requirement that the oath should be taken at any particular time. The same considerations control as to the time for the sessions of the board. (Hallo v. Helmer, 12 Neb., 87.) The taxpayer was entitled to no other notice than the one handed it when the officer tendered the list to be filled out, which notice informed it when the board would meet. (R. S., Sec. 1356.) It was the business of the association to

60    ALBANY BLDG. ASSN. v. CITY OF LARAMIE. [10 WYO.

look after its interests and to appear before the board if it
desired relief. (Board v. Searight, 3 Wyo., 777; State v.
R. R. Co., 30 Pac., 693.) The ordinance directing suit is a
sufficient warrant for the collection of the tax. Moreover,
the tax list is sufficient. There is nothing in the proposi-
tion that the figures under the heading of moneys and
credits do not indicate what is meant. The dollar is the
only unit of value, and the roll shows a valuation of 20,000
units, and hence a valuation of 20,000 dollars. (Hopkins v.
Orr, 124 U. S., 510; Hines v. Chambers, 29 Minn., 11.)
There is no other statutory penalty inconsistent with the
penalty sought here to be enforced. The penalty is for re-
fusing to assist in listing property which the taxpayer is
required to assist in listing. Statutes designed to secure
honest returns and fixing penalties for false or deficient
lists are everywhere in force and universally sustained.
(Cooley on Taxation, 357; Com. v. Cook, 50 Pa. St., 201;
Gilliland v. State (Ind.), 42 N. E., 238; Com. v. Holidy
(Ky.), 33 S. W., 943; State v. Halter (Mass.), 47 N. E.,
665; Durban v. People, 54 Ill. App., 101; Hartford v.
Champion, 58 Conn., 268; Berry v. State, 10 Tex. App.,
315; Burns v. State (Ind.), 31 N. E., 547; State v. Welsh,
28 Mo., 600.)

By the election of the company it has all the powers con-
ferred by the general incorporation laws. The resolution
of acceptance of the law of 1897 was adopted March 26,
1897; and by the provisions of the statute it is deemed
to have been duly incorporated under said act from the
date of its certificate of incorporation. (Laws 1897, pp.
145-6.) The non-user of the privilege of loaning to non-
members does not alter the situation. The power has been
conferred, and by its voluntary act it withdrew from one
class and joined the other. It may loan to whom it pleases.
Its securities are taxable the same as other corporations.
Its shares of stock are transferable and the accumulated
funds are held, like other corporate property, for final dis-
tribution, either in hastening the maturity of its loans to

borrowing members, or payment in cash to those who do not borrow. The statute makes all mortgages and other like securities taxable, and all other property belonging to any incorporated company is taxable. (R. S., Sec. 1763; Laws 1891, Ch. 36.) Under the city charter all property, real, personal and mixed, is taxable by the city. (R. S., Sec. 1348.) The taxation of unredeemed shares to the individual owners would not exempt the other property of the company, including its profits from taxation. Both the capital stock and shares of stock may be taxed without having a result of double taxation. (Thomp. on Corp., Sec. 2812.) Every presumption is against exemption from taxation. (Thomp. on Corp., Secs. 2823-2824.) The statute of 1891 provided that the paid in capital stock of all incorporated companies, together with the accumulated surplus, not including real estate situated in any other State, should be assessed to the association or company issuing the same, and that the persons holding the capital stock should not be assessed therefor. (Laws 1891, p. 169.) That act repealed the right to assess the shares to shareholders as provided by the act of 1890, upon which the company relies. The act of 1891 was inconsistent with the provisions of Section 3 of the former act, authorizing the assessment to individual shareholders of unredeemed shares. The later act related to the taxation of corporations and included by its terms the class of corporations to which plaintiff in error belongs. Again in 1895 the Legislature enacted a statute providing that the property of domestic corporations should be taxed in the same manner as the property of individuals, but that the capital stock should not be taxed. (Laws 1895, p. 207.) There is, therefore, no theory based on the statutory provisions that can be advanced to exempt the property of the company from taxation.

The taxation of building associations is governed by the same principles as that which govern corporations generally. They must, in the absence of exemptions, pay taxes like other corporations. (4 Ency. L., 1012; State, Wash. B.

& L. Asso. v. Hornbaker, 41 N. J. L., 509; State v. Red Falls B. Asso., 45 Minn., 154; People's Loan & H. Asso. v. Keith, 153 Ill., 655; Bennett v. Merchantsville, etc., Asso., 44 N. J. Eq., 116.)

The note or account and mortgage held by a loan association is in no sense a credit of the borrower, but it is a credit belonging to the association. If the credit is taxed, the tax falls on the corporation, and not on the borrower. If a portion of it ultimately falls on the borrower as a stockholder, that amount falls on him as a stockholder having an investment for profit in the corporation.

POTTER, CHIEF JUSTICE.

This case involves the validity of a municipal tax levied by the City of Laramie in 1897 against the Albany Mutual Building Association, on account of certain moneys and credits assessed in the name of said association. Suit was brought for the recovery of the tax and judgment rendered in favor of the city. The association brings the case to this court on error.

The plaintiff in error is a building and loan association incorporated under the act of March 7, 1890, authorizing the incorporation of such an association for the purpose of "accumulating the savings and funds of its members and lending them only the funds so accumulated." The same act provided also for the organization of another kind of company to be known as a benefit, building, loan and trust association, the only practical difference between the purposes of the two being that the latter might loan its accumulated funds to others than members.

The act of 1890, so far as it related to the formation, regulation and conduct of building associations, was repealed by an act approved March 7, 1897, entitled "An act concerning the formation, regulation and conduct of domestic building associations." That act granted to a domestic building and loan association the privilege of loaning its funds to non-members, if its by-laws should so provide.

The repeal of the act of 1890 was, however, accompanied by the provision that all such associations doing business under the act repealed might complete their term of existence under it, or might proceed under the new act upon accepting the same by a unanimous vote of its trustees at any regular meeting, and filing a certificate of such acceptance with the Secretary of State.   March 26th, 1897, the officers of plaintiff in error association signed such a certificate, and the same was filed April 3, 1897; but in practice, at least, the company confined its loans to members.

The annual report of the association for the year ending December 25, 1896, showed that during that year it had made loans amounting to $23,600, and had among its assets the following:   Bills receivable, $137,800;   real estate, $1,000;  cash on hand, $842.76;  due from delinquents, $555.48, and fines due from delinquents, $55.55, making a total of $140,253.79.   Among its liabilities were given $94,-980.00 as the amount of dues paid in on shares; $10,.591.34 as "unearned premiums," and $34,682.45 as "net earnings." The report for the succeeding year, 1897, disclosed an increase of $41,000.00 in bills. receivable, and that the "net earnings" had grown to the sum of $42,293.74.

In 1897 the plaintiff in error was assessed for taxation by the City of Laramie, not only upon its real estate, but in the sum of $20,000 upon moneys and credits.   The amount of that assessment, it will be seen, is not only less than the net earnings, but also below the amount of the loans made in 1896, and a small percentage only of the aggregate of the face of the outstanding loans, or bills receivable.   It is apparently conceded that the taxing authorities had in mind the amount of the net earnings, or surplus, in fixing the value of moneys and credits of the association for the purposes of taxation.   No question, therefore, arises as to over valuation.   But the broad ground is taken by the association that it was not taxable upon moneys and credits.

It is insisted in the first place that the law made express provision for taxation in case of building associations, which

excluded the right to tax them upon their loans or moneys and credits; and, in the second place, that loans made by the association, and the securities therefor, do not constitute, in any proper sense, assets or property of the association.

Section 3 of the act of 1890, under which act the plaintiff in error was incorporated, provided as follows: "The shares of stock of mutual loan and building associations shall be assessed at their cash value, but only the unredeemed shares of such stock shall be taxed, and these shall be listed to the individual owners thereof." As to benefit, building, loan and trust associations, a different rule was adopted, it being declared in Section 9 that their shares should not be taxed, but that the association should be taxed upon its property and accumulated funds, the same as individuals. It is unnecessary to consider whether, as contended, the legal effect of Section 3 was to except from taxation the credit assets of a building and loan association, for we conceive the matter to be controlled by subsequent legislation.

An act of the Legislature approved January 9, 1891, provided that "the paid in capital stock of *all* incorporated companies or *associations* doing business in this State, together with the accumulated surplus, not including real estate situated in any other State than this, shall be assessed to the company or association issuing the same, and the persons holding the capital stock of such companies or associations shall not be assessed therefor;" and by that act all inconsistent acts were expressly repealed. (L. 1891, p. 169, Ch. 38.)

In 1895 the following statute was enacted: "The property of domestic corporations shall be returned, listed, assessed and taxed in the same manner as the property of individuals, but the capital stock of such corporations representing, as it does, simply the interests of the owners thereof in the property of such corporations shall not be taxed." By Section 2 all acts and parts of acts inconsistent with the act were repealed. (L. 1895, p. 207, Ch. 87.) The statute

of 1895 was in force at the time of the assessment complained of. Even if Section 3 of the act of 1890 was intended to cover the whole subject of taxation of building associations, and if it be conceded that its effect was to prevent the taxation of the association upon its credits, it is clear that it was not incapable of amendment or repeal, and that the Legislature thereafter, as well as before, had the power of enacting altogether contrary provisions, and prescribing a different rule. Had the act of 1890 expressly exempted such associations from taxation, it would not have prevented the subsequent adoption of a different policy. (Bourguignon B. Asso'n. v. Commonwealth, 98 Pa. St., 54.)

Building associations were not excepted from the provisions of either the act of 1891 or 1895. The former applied generally to all incorporated companies and associations, and the latter to domestic corporations, and each manifestly included a building and loan association incorporated under the act of 1890. Moreover, there is nothing in the nature of such a corporation to render its property non-taxable, in the absence of a constitutional or valid statutory provision exempting it. (4 Ency. L., 2d Ed., 1012; Endlich on Building Associations, Sec. 459.)

But it is contended that, outside of its real estate, it had no property. The broad proposition is made that the ostensible assets of the association were not such in reality, and that the mortgages held by it do not constitute, in legal contemplation, assets taxable to the association. This result is supposed to follow from the fact that the society is mutual in character, and from the peculiar features attending such an association, and the loan transactions between it and its members.

The modern building and loan association is defined by one law writer as "a private corporation designed for the accumulation, by the members, of their money, by periodical payments into its treasury, to be invested from time to time in loans to the members upon real estate for home purposes,

the borrowing members paying interest, and a preference in securing loans over other members, and continuing their fixed periodical installments in addition, all of which payments, together with the non-borrower's payments, forfeitures for such continued failure of payments, fees for transferring stock, membership fees required upon the entrance of the member into the society, and such other revenues, go into the common fund until such time as that the installment payments and profits aggregate the face value of all the shares of the association, when the assets, after the payment of expenses and losses, are prorated among all the members, which, in legal effect, cancels the borrower's debt, and gives the non-borrower the amount of his stock." (Thompson on Building Associations, 2d Ed., Sec. 3.) The following definition is given by another: "A private corporation for gain, erected for such time, limited or unlimited, as may be permitted by the laws under which it is incorporated, for the accumulation, from fixed periodical contributions of its shareholders in payment of the stock subscribed by them, the penalties for their non-payment and the profits upon their investment, of a fund to be applied, from time to time, in accommodating such shareholders with loans or advancements, primarily for the purpose of acquiring the free possession of real estate or constructing dwellings, or both, under terms and regulations prescribed by legislation or reasonably and lawfully ordained by charter and by-laws of the association, upon principles of strict mutuality and equality of benefits and obligations, with the effect of extinguishing the liability incurred for such loans and advancements simultaneously with the termination of the shareholder's periodical contributions upon the stock held by him in the association; the object of the latter being completed when the fund raised is sufficient to distribute to each member the par value of all shares subscribed by him and held without loans, and to extinguish all loans held by shareholders." (Endlich on Building Associations, 2d Ed., Sec. 16.)

The above definitions may be taken not only as descriptive of building associations in general, but as well of the association in the case at bar. The general purpose of the association as prescribed by the statute under which it is incorporated has already been stated. Under its by-laws, a person becomes a member by holding one or more shares. Upon each share the member is required to pay into the treasury of the association one dollar on or before the 25th day of each month until the series matures. The funds of the association is loaned, at each regular meeting, occurring ordinarily on the 25th day of each month, to the member bidding the highest premium for the same. The premium is deducted in advance, and the successful bidder receives in cash the amount of his loan, less the premium. Before receiving the money, the borrower must execute to the association a first trust deed on unencumbered real estate in Albany County, this State; or pledge to the association such an amount of stock that the money actually paid in thereon shall equal the amount to be borrowed. For each two hundred dollars loaned him, he must also pledge to the association one share of stock to be held as collateral security. The security must be approved by a majority of the trustees present. Each shareholder is entitled to borrow upon real estate security the sum of two hundred dollars for each share of stock held by him. The rate of interest on all loans to all members is six per cent. per annum, payable quarterly, in equal monthly installments, on or before the regular meeting day of the month. This interest the borrower must pay in addition to the dues upon his stock. A loan cannot be called in if the interest and dues are paid until the series to which the borrower's stock belongs matures, at which time the loan is released at the cost of the borrower, if all dues, interest, fines, premiums, &c., have been previously paid in full. Should the borrower fail totally in his payments for a period of six months, or if the balance due has been allowed to accumulate until it equals six months' dues and interest, the board may proceed to foreclose upon the securities. In case of foreclosure, the

borrower is charged with the full amount of the loan, together with the delinquent dues, interest and fines; and is credited with the value of his pledged shares of stock, which are thereupon cancelled. A borrower may repay his loan on one or more shares and retain his stock, by paying in cash the face of the loan on such shares, less the unearned premium on the same.

The argument of counsel for plaintiff in error upon the question of the taxable character of the mortgages and funds of the association cannot be better nor perhaps more briefly stated than by quoting a portion of their brief. They say:

"The true significance of these securities is, therefore, that part of the members of the association (depending upon the length of time it has run) have, in anticipation of the maturity of their stock, received the money which would otherwise be paid to them at maturity; and, in order that the continued payment of their dues may be assured until maturity, they have given securities to the association. They are bound, further, to pay interest upon their advances in order to equalize the distribution of funds as between them and the members who do not receive their money so soon. The loan itself is never paid back, and is never intended to be paid back, and has no existence apart from the obligation (assumed at the organization of the concern) to pay the monthly stock dues. Every dollar of the funds of the association is put out in this way in the redemption of stock. The process begins at the first monthly meeting and continues as fast as the funds accumulate, until all the stock has been paid off. The nominal assets of the society go on increasing until they amount (just before maturity of the series) to hundreds of thousands of dollars. When the last two hundred dollars comes in it is handed over to the owner of the last unredeemed or unborrowed share and the whole bubble bursts; the vast array of assets is instantly dissipated and the association is at an end."

Upon that statement of the nature of the securities, it is

insisted that the association has no "property," interest or right in the nature of property in the securities; that it has no surplus of credits over debts, and that the only interest in the nature of surplus credits or "property" is that of the individual shareholder who has paid into the association and not received his money.

What we consider to be an inaccurate statement of the situation lends plausibility to the argument. In the first place the association has and controls certain securities representing loans or advances of money, and it is immaterial, in this connection, whether the money turned over to the mortgagor is to be called a loan or an advance. The securities, upon default, may be foreclosed for the amount remaining unpaid of the loan or advance. They are owned by the company, and are not the property of the shareholder in legal contemplation any more than the property of an ordinary corporation is the property of its shareholders. The interest of the stockholder in either case is represented by his stock. The shares of stock are the property of the shareholders. The by-laws, as well as the statute, refer to the transaction between the association and the borrowing member as a loan, and all the provisions of the by-laws treat the transaction upon that basis.

We are here considering the subject of ownership of the securities, or the possession of taxable assets by the association; and only as it affects that question are the company's by-laws and its relation to its members material; and it is only in that aspect that we shall allude to or attempt to construe them.

It is only in the broadest possible sense that it can be said that the money received by the borrowing member is received in anticipation of the maturity of his stock. It is true that he is limited in borrowing to the par value of his stock, and that he expects his stock to mature, and in the end to equal in value the amount loaned to him. In all cases the expected may not happen. The association may become involved in losses to such an extent that the stock may not

mature or the borrower may, through misfortune or otherwise, default in his required payments. In the latter case only the actual value of the stock will be credited to him, and his property will be sold to reimburse the association for the remainder. For most purposes, it may be immaterial whether the transaction be termed a loan or a redemption of the stock. But it is clear that its legal effect is not, at least at the outset, a redemption of the stock. The shares remain the property of the stockholder, and they are taken by the company only as collateral security. The stock and the borrower's obligation constantly remain separate and distinct things. The interest is paid on the loan, and the dues are paid on the stock. At any time the borrower is permitted to pay the face of his loan and retake his stock. He may do this, indeed, immediately before the maturity of the stock, should he so desire. A condition of the loan, however, is that when the stock matures the association will apply it upon and consider it as a satisfaction of the loan; and prior to maturity its actual value will be credited in case of default. But it is to be observed that, by agreement between the parties, the relation of the stock to the loan is this: It is taken as collateral security, remaining the property of the borrower, but as occasion arises, under the by-laws, the company applies it upon the debt. It is probably true that the loan as such is not paid back, nor intended to be, provided the borrower continues his interest and stock payments, and the stock matures. But if the stock should fail to mature, or the debtor make default in his payments, a part at least of the loan would be paid back or recovered from the mortgaged property. Assuming, however, the entire accuracy of the statement that the loan is not to be paid back, that results because of the application toward it of the stock held as collateral security.

We do not understand that the object of the mortgages is to secure the continued payment of stock dues. In case of default it is not the estimated amount of dues necessary to mature the stock which constitutes the debt, but the debt

is based upon the amount of the loan. No doubt the obligation requires as a condition the payment of the monthly dues, and possibly it contains a specific promise to pay them; but the object of the securities is to save the association from loss, and to enable it to recover the amount of the loan if the payments of dues and interest are not made. It is a very little different, at least, in legal effect from a loan between other parties. The substantial difference rests upon the dual relation of debtor and shareholder, and the condition that the value of the stock may always be availed of to reduce and in the end to satisfy the debt. Suppose a shareholder should borrow money from a third party, and should mortgage lands to secure the same and in addition pledge his shares of stock in the association, under a contract that the lender should take the shares in place of the debt when they became equal to it in value, or credit their actual value in case of default and foreclosure. Such a case, it must be conceded, we think, would present an instance of a loan, and that the credit represented by the loan would be a taxable asset in the hands of the one loaning the money.

In regard to the right to treat the credits represented by loans, and the securities therefor as assets of the company, it is difficult to observe any substantial difference between a building association and any ordinary corporation. A debt due to an ordinary corporation by a stockholder, secured by mortgage and a pledge of the debtor's shares, would surely constitute an asset in the hands of the corporation. We ought perhaps to say that in this case we are not concerned with any question as to the assessable *value* of mortgages or credits in the hands of a building association; whether they are assessable at their face value, or at the sum which would remain due after crediting the then actual value of the collateral shares, or upon the amount of surplus or net earnings, for it is apparent that, upon any basis, the assessment of $20,000 did not amount to an over valuation.

But it is insisted that, assuming the mortgages to represent real debts, they are not taxable assets for the reason

that the liability of the association to its shareholders exactly equals its credits, and that there is no surplus of credits over debts.

A proper system of bookkeeping, no doubt, requires the amount of dues paid in upon stock, as well as the earnings or surplus, to be counted as liabilities, over and against bills receivable and other assets; but, in our opinion, such liabilities are not debts within the meaning of the statute authorizing a deduction from the gross amount of moneys and credits, of *bona fide* debts owing by the taxpayer. (R. S., 1887, Sec. 3792; R. S., 1899, Sec. 1776.) It seems to be conceded that the assessment in this case was intended to reach the net earnings of the company. The right of any shareholder to withdraw prior to the maturity of the stock is limited by the by-laws to the amount paid in by him upon his stock, and then only after twelve months, and on thirty days' notice, out of the first unappropriated funds collected. Net earnings are, therefore, not to be withdrawn. The statute, however, is not to be construed as comprehending by the language "*bona fide* debts owing by him" the assets of a corporation which would be divided among shareholders upon dissolution, nor in case of a building association the assets which, when the stock matures, will be distributed to the owners thereof. Some idea of the purpose and effect of the statute is to be obtained from the provision that no obligation for an unpaid subscription to any society nor for a subscription to or installment on the capital stock of any corporation is to be deducted from moneys and credits of the taxpayer.

It would be just as true of any corporation probably that, by considering its capital stock paid in, and its surplus, as debts, its assets and liabilities would equal each other. That such liabilities are not regarded as debts to be deducted from credit assets within the meaning of tax laws is made plain by a consideration of the authorities. The argument, after all, is but another way of stating the proposition that the assets or property of a company are in reality the assets and

property of its shareholders, rather than the corporation itself.

As already pointed out, the ownership of the shareholder in the company's assets is figurative only. The company owns its property, while the stockholder owns his shares of stock. In an ordinary corporation the shareholder may have paid in the par value of his shares, and receive a part of the profits of the concern by way of periodical dividends; while with a building association the stock is paid for in small monthly installments, and the profits are permitted to remain until their increase, together with the monthly dues, shall bring the stock up to its par value, and then, if but one series of stock is issued, or to be issued, the company dissolves and the shareholders become entitled to their share in the general distribution. If more than one series of stock is issued, the result is practically the same as to the shareholders in each series, for as to them there is a practical dissolution when the series matures. But that distinction between a building association and an ordinary corporation does not create a distinction in legal contemplation as to the ownership of company property.

Our views above expressed are sustained by the great weight of authority. Indeed, it is almost the unanimous holding of the courts that the mortgages or credits of a building association constitute taxable assets of the association. Mr. Endlich says that they are to be considered as "synonymous with property for the purposes of taxation." (Endlich on Building Associations, Sec. 458.)

In a leading case it was said: "The money which came to the hands of the stockholders was a part of the assets of the corporation. It remained there as a part of such assets. The stockholders pay interest upon the entire sum, for its use, until the dissolution of the society;" and, again: "But it is impossible to read the constitution of this society and assent to the view that these loans ever cease to be assets until the dissolution of the corporation. This is ap-parent from the language of Article 9, Section 1, relative

to the giving of security for these loans, and the assignment of stock as collateral security, and the redelivery of the securities at the close of the corporate existence, as provided for in Article 13. And in the last mentioned article the provision that when the board shall have ascertained that the value of each share amounts to $200 then, &c., is not possible of execution, except upon the idea that all these loans are assets. If the loans are advances, upon which there is a continuous. application of the value of the shares upon which the advances are made, then the shares can have no independent value, because the value is perpetually devoured by its application in part payment of the loan. There is an undoubted right to apply the shares to the payment of the loan at the time of the dissolution. Until that time the stockholder's certificate of shares of stock is his property, and the amount of all the loans is the company's property, which, upon complying with certain conditions, the stockholder is permitted to use during the existence of the association. Considering them as assets, which I use as synonymous with property in this case, there was no error in assessing them." (State, Wash. B. & L. Association v. Hornbaker, Collector, &c., 41 N. J. L., 519.) That case was later affirmed by the Court of Appeals and Errors of New Jersey. (42 N. J. L., 635.)

The same conclusion was announced in Illinois in the case or People's Loan and Homestead Association v. Keith, Collector, 153 Ill., 609. Respecting loans made by the building association to its members, the court said: "So far as the nature of the transaction is concerned, it is simply a loan of money made by the association, and the note and mortgage executed by the borrower represent a debt due from the borrower to the association for money loaned. * * * And if the transaction is a loan, and the note (or contract) and mortgage are to be treated as a credit, upon that principle can it be claimed that a credit of that character should be exempt from taxation, when an ordinary loan, evidenced by the same security, is not?" The court then, alluding to an

indebtedness of a stockholder in an ordinary corporation to the corporation, to secure which he executes his note and mortgage to the corporation, and assigns his stock as col-lateral security, says: "The proposition is a plain one that the credit is liable to be assessed in the hands of the corporation for taxes. * * * If we are correct in regard to the case supposed, upon what principle can it be claimed that the note (or contract) and mortgage given to a homestead association for a loan can be exempted from taxation? The credits in the two cases stand upon an equality."

In Minnesota it was held that mortgages held my mutual building associations were taxable, the stock of the association not having been taxed. (State v. Redwood Falls B. & L. Assn., 45 Minn., 154.)

In Pennsylvania, under a general law providing for the taxation of the capital stock of "every company or association whatever," &c., "excepting foreign insurance companies, banks and savings institutions," it was held that a building association was a corporation taxable under the act; and that the appellant association had a paid up capital of $50,113.45, that being the amount of money which had been paid in by shareholders, and, as it appeared, had been loaned out to members on mortgage security. (Bourguignon B. Assn., 98 Pa. St., 54.)

In Georgia, mortgages held by a building association were held to be taxable to it, the same as if held by an individual, and an act was adjudged unconstitutional that provided for a tax upon the portion of the stock of such associations upon which no advance had been made or money borrowed, at its true market value, in lieu of all other taxes against the association. The court said, among other things, "That act, so far as building and loan associations are concerned, made but one item taxable; that is to say, shares of stock. If the association is possessed of other property, land, houses, bonds, mortgages, office furniture, etc., why should not this property also bear its proportion of the burden imposed by the government? Similar property of individuals and other

corporations is taxed, and we not only know of no rule of law by which such property can be free of this burden, but we know of no moral reason why it should." (Georgia State B. & L. Assn. v. Mayor, etc., 35 S. E., 67; Atlanta N. B. & L. Assn. v. Stewart, 35 S. E., 73.)

In New Mexico, upon the theory that mortgages held by a building and loan association were valuable property in the hands of the corporation, they were held to be taxable against the association. (Territory v. Co-operative B. & L. Assn., 62 Pac., 1097. See also Rochester B. & L. Assn. v. Rochester, 45 Atl., 255 (N. H.); State, Wash. B. & L. Assn. v. Creveling, 39 N. J. L., 465.)

In North Carolina the capital stock of a building association is held to be "property," and taxable against the association. (Charlotte B. & L. Assn. v. Commissioners, 105 N. C., 410.)

Cases are cited from Maryland and West Virginia which are deemed to announce a contrary doctrine. They should perhaps be so understood, at least the opinions do not appear in their reasoning to be in harmony with the views expressed by the other courts. In the Maryland case (Faust v. the Twenty-third German Am. B. Assn., 84 Md., 186) it was held that an act exempting building association mortgages from taxation was not repealed by a subsequent act relating to the taxation of mortgages. In arriving at its conclusion, the court construed the later act, on account of some of its expressions, as intended to apply only to a transaction wherein money is received by one party, and a contract is made by him to repay it to the other party; and it was said that in a building association mortgage the contract was not of that nature. The courts of Maryland decline to consider the sum advanced by a building association to its shareholder, for which a mortgage is executed, as either a debt to the association or a loan by it.

In the West Virginia case (Ohio Valley B. & L. Assn. v. County Court, 42 W. Va., 818) it was held that building and loan associations are not to be assessed with a capital stock,

but that the members were to be assessed with their shares. In the opinion of that court, the money paid in by shareholders and loaned out is not capital to be taxed under a law which requires the taxation of the actual value of the "capital" of corporations "employed or invested by them in their trade or business."

We do not regard the case cited from Missouri (Kansas City v. Merc. Mutual B. & L. Assn., 145 Mo., 50) as in point on this question. In that case the court had under consideration the provisions of a municipal charter which authorized the taxation of the property of corporations "except incorporated banks and such other corporations as are excepted by state law." By state law the property of building and loan associations was excepted from taxation; the law providing for the taxation of such corporations by assessing the shareholders on their shares, and from *them* collecting the tax.

So far as the cases from Indiana are applicable, they incline to the support of the position of the defendant in error, in this case, the city. In that State, by statute, building and loan associations are assessable with the amount paid into the association upon outstanding shares of stock, less the amount loaned to shareholders secured by mortgage upon property listed for taxation; and it is provided that neither the association nor the shareholders shall be liable to other taxation upon said shares of stock. Nevertheless, it is held that the law did not intend to limit the right to further tax the holders of stock upon their shares. (Deniston v. Terry, 141 Ind., 677.) In a later case it is said that the theory of the law mentioned above was not the taxation of the stock, but "the taxation of the balance on hand or remaining to the credit of the association." (Harn v. Woodward, 151 Ind., 132. See also State ex rel. v. Workingmen's B. & L., etc., Assn., 152 Ind., 278.)

So far we have considered only the proposition contended for that the credits in the hands of the association were not, in reality, credits, assets or property of the association, and

did not, in any proper sense, constitute taxable property as against the association.  We have probably occupied unnecessary time and space in discussing that matter; but the very earnest and able argument of counsel for plaintiff in error has led us to review the authorities, and as clearly as possible state the reasons which constrain us to adopt the contrary view.  We think the District Court was correct in holding the property taxable.

The further objection is urged against the tax that it was not based upon a valid assessment.  The item in controversy was not included in the schedule of the company's taxable property handed in by its secretary, and the evidence is conflicting as to whether it was placed on the roll before its return by the assessor, or was added by the Board of Equalization.  We will not extend this opinion by a review of the evidence upon the question, but the conclusion seems more reasonable from a consideration of all the facts that the item was added to the assessment by direction of the board.  The assessor doubtless made out a separate schedule, but in the roll the item was not carried into the amount of the total assessment.  Moreover, the conflicting evidence will receive that construction which will sustain the judgment, this court assuming that the District Court took that view of it.  If there is any doubt, as contended, about the power of the assessor to individually act in the matter and insert in the roll items omitted by the taxpayer from his list, which we do not decide, there is no doubt about the right of the board to do so; and hence, in view of the conflict, we will adopt the theory which we deem amply supported by the facts and the evidence that the board increased the association's assessment by adding the contested item .

The charter of the city contains several sections providing a method for the assessment, levy and collection of taxes for general revenue purposes, which it is declared shall be applicable until an ordinance be enacted covering the subject.  (R. S., 1887, Sec. 222; R. S., 1899, Sec. 1348.)   So

far as appears by the record, the only ordinance enacted was one adopted in 1898, with reference only to the collection by suit of delinquent taxes. We are, therefore, thrown upon the statutory provisions, contained in the charter, to determine the legality of the assessment.

The City Clerk, who is clerk of the corporate board, is ex-officio assessor. The Board of Trustees and assesor of the city is constituted a board for the equalization of assessments, with power to add omitted property, and to increase, diminish, or otherwise alter and correct any assessment. (R. S., 1887, Sec. 229.) The use of the term "Board of Trustees" is doubtless an inadvertence, and it was apparently borrowed from a former charter, which designated the corporate board by that name. Under the later charter, however, the governing board is composed of a Mayor and a certain number of Councilmen, and is generally referred to as "the Mayor and Council," or "the City Council." No independent Board of Trustees by that name is provided for, so it is evident that the regular corporate board was intended and understood by the term "Board of Trustees." The statute should receive a reasonable interpretation, and one which will render it operative. It is immaterial, in our judgment, to any issue in this case whether the Mayor is a regular member of the board or not. He attended the sessions, but without him there was a quorum, and no injury could possibly have resulted from his attendance, even if it should be held that he was not a member; but from a reading of the whole statute we incline to the opinion that the Board of Trustees, constituted with the assessor a Board of Equalization, is the City Council, composed of the Mayor and Council, or, in other words, the corporate board.

The original act (R. S., 1887, Sec. 229) provides that the Board of Trustees (corporate board) and assessor shall constitute a Board of Equalization, and shall hold a special meeting within five days after the return of the assessment roll, and shall have the right to adjourn *such* meeting from

day. to day for not more than *three days*.   After declaring the authority of the board to increase assessments, it is provided that the clerk of the Board of Trustees shall notify the persons whose assessments have been raised; and that such persons may appear before the Board of Equalization at their next *regular* meeting, and that, upon satisfactory evidence, the board may abate unjust assessments.   No other provisions for a *regular* meeting is to be found, except the regular meetings of the City Council.   There is no regular meeting for the appearance of persons whose assessments are raised, unless the next regular meeting of the City Council is intended.   We think that the statute must be construed as referring to the next regular meeting of the corporate board.   By that construction taxpayers are afforded ample opportunity to be heard, and the work of equalization can be reasonably expedited, since the Council is required to hold two regular meetings each month.   It was unfortunate, perhaps, that such careless use of language was indulged in; but we think the statute is reasonably and fairly to be construed as above stated.

By an act of February 20, 1897, it was provided that in cities of the second class the Board of Equalization should have power to be in session for a period of fifteen days, exclusive of Sundays.   (L. 1897, Ch. 28, Sec. 14.)   It is clear that the session intended to be affected by that provision is the special meeting originally limited in the Laramie Charter to three days, since it is understood that Laramie at that time was the only city in the State to which the act applied.

It has seemed advisable to go into the matter of the constition of the board and its powers as to assessments and meetings, to properly dispose of the contention of plaintiff in error upon the validity of the assessment.   The Board of Equalization in 1897, in the City of Laramie, commenced its session June 17, but did very little, apparently, until June 22.   Their sessions were held, as shown by their record introduced in evidence, upon the following named

dates: June 17, 21, 22, 23, 24 and 25; July 2, 3, 7 and 8. The session of each day following June 17 was held pursuant to adjournment.

It appears that either on or after July 3 the secretary of the association appeared at the meeting of the board and protested against the assessment of moneys and credits. He testified that he had received no notice of the raise, but upon looking over the roll he had observed it. Counsel insists that the Board of Equalization was *functus officio* on July 3d, and could transact no business then or thereafter in relation to the assessment. In the first place, it appears, by a recital in the minutes of the meeting of June 25, that the work of equalization was completed, and the board adjourned until a subsequent date. The copy of minutes in the record states that the adjournment was until July 30. That is doubtless an error of the copyist, since they met on July 2, "pursuant to adjournment." It is evident, therefore, the evidence disclosing nothing to the contrary, that we must consider the addition to the assessment as made on or before June 25. The power of the board to be in session at its first meeting had not ceased at that time. It did not cease until the close of July 3, two Sundays having intervened. The board did nothing with the assessment thereafter, except to refuse to disturb it after hearing the protest. There is nothing, therefore, in the point as to expiration of time for the meeting of the board in respect to the addition to the roll of the assessment complained of, unless it is to be considered as well made regarding the meeting when the company's secretary appeared and was heard in opposition to the assessment. But having had actual notice of the increase, and having appeared and entered its protest, we are of the opinion that it cannot now complain of the absence of written notice, and of a possible irregularity as to the time of meeting. The evidence seems to show rather clearly that the time for the hearing was agreed upon between the board and the managing official of the company. At least, an evening was set apart for it, and the representa-

tive of the company and the City Attorney both argued the matter. We observe no substantial defect in the assessment.

An ordinance adopted by the Council prior to the commencement of this suit provides for the recovery by suit in a court of competent jurisdiction of taxes delinquent for sixty days; and the passage of the ordinance was followed by a resolution directing the City Attorney to bring suit against the plaintiff in error and others to recover all taxes levied and assessed against them, with interest and penalties. The charter provides that the assessment, levy and *collection* of taxes shall be made as may be provided by ordinance. The city, therefore, had authority to provide for collection of taxes by suit, and having done so, and the time having long expired for the payment of the taxes levied against the moneys and credits of the association in 1897, upon the basis of the assessment aforesaid, and there being no claim of payment, we observe no reason why the suit may not be maintained for the collection of the delinquent taxes for that year.

The petition in this case contains two causes of action. We have so far considered the second cause of action which sets out the liability for the taxes levied against the company. By the first cause of action the city seeks to recover the sum of two hundred dollars as a penalty for the alleged refusal of the association to assist the assessor in making out a list of its moneys and credits.

By a provision of the charter (R. S., 1899, Sec. 1351; R. S., 1887, Sec. 225) a penalty of two hundred dollars is imposed upon "any person who shall refuse to assist in making out a list of his property, or of any property of which he is required by law to assist in listing," and the same is made recoverable by action in the name of the city.

The secretary of the company prepared a list, and made oath to it, and delivered the same to the assessor, but refused to include moneys and credits, insisting to the assessor that no such property was taxable to the association. Counsel for the city contend that the wilful omission of said

property, and a refusal to list it when requested to do so, renders the company liable for the penalty.

In the first place, we cannot but regard the right to recover the penalty from the company as extremely doubtful, even if it should be conceded that, under the circumstances, someone became subject to the prescribed penalty. The preceding section provides that the assessor shall enter all taxable property upon the assessment books "with the assistance of each person required by law to list property for himself or for another." A corporation as such, independent of some individual, cannot, in the nature of things, assist the assessor in listing its property. Such assistance must come from an officer or agent of the company. The officer or agent is covered by the provision for assistance by a person required to list property for another. The same is true, for example, of a guardian, executor, or trustee. Doubtless the statute might make the company liable for the omission of its officer, or the estate of a minor for the neglect of his guardian, but in this respect the question is, Has the statute done so? The penalty is imposed upon the person who shall refuse to assist as to property which he is required by law to assist. It would be pertinent, therefore, to inquire who refused. If there was such a refusal as to make the penalty enforceable, the refusal must have come from someone required by law to assist. A corporation is a fictitious person, a legal entity. It is usually included in the term "person" as used in statutes, but it must act through its officers or agents. The general revenue laws required the property of a corporation to be listed by its principal accounting officer or agent in the county where the property was located. (R. S., 1887, Sec. 3778.) We do not care to further continue the discussion of this feature of the question, enough having been said, we think, to show that, in the present condition of the statute, the liability of the company for the penalty may well be doubted, even admitting that it might be recovered upon the facts in the case from the person refusing assistance.

But we are unable to agree with the construction of the statute contended for, on behalf of the city. Taking the two sections together, the one providing for assistance, and the one imposing the penalty for refusal, we are of the opinion that the penalty is imposed, first, upon the person who shall refuse to assist in listing his own property, and, second, upon the one refusing to assist in listing the property of another as to which by law he is required to assist in listing. The words "or of any property" in the section prescribing the penalty do not, in our judgment, apply to the individual property of the one required to make out the list. A refusal to make oath or affirmation to the schedule is made subject to the same penalty. An omission where the oath is not taken is covered by the succeeding section, which permits omitted property in such case to be assessed at double the ordinary assessed value of like property. The oath is certainly deemed to be of some importance, or the refusal to take it would not be made a cause for an infliction of the penalty. The statute seems to be framed upon the theory that the requirement of an oath to the list is a sufficient protection to the public against an intentional omission of taxable property, knowing the same to be taxable.

The statute is penal in character and must receive a strict construction. To concede the correctness of the proposition maintained by counsel for the city would be to hold that any taxpayer who omits from his list any of his property, in the best of faith, honestly believing the same nontaxable, either as exempt or for any other reason, is liable to pay the penalty of two hundred dollars, if it should be determined that his belief was erroneous.

If that is to be the policy of the law, it should be clearly expressed. That is not, in our judgment, the purpose and effect of the statute under consideration. It would have been easy to have said that anyone omitting any property shall forfeit two hundred dollars. The Legislature, however, did not so say. In the succeeding section the case of

an omission is provided for, and a severe penalty therefor inflicted; and it was deemed sufficient to cover the case of an omission in the absence of an oath.

In regard to this question, we have confined our discussion to whether an omission from a list made out and sworn to permits the enforcement of the penalty.. That, in our view of the evidence, is the only fact upon which the penalty is sought to be recovered. Whether the refusal of one required to list property to furnish information, upon request, of property not included in the list, to enable the assessor to list it, would of itself amount to a refusal to assist, within the contemplation of the statute, and subject the one refusing to the penalty, we do not consider, for the reason that we do not understand such a matter to be involved here, even if the company could be held liable in any case.

The only request for information, as shown by the testimony, was a request by the assessor of the secretary for the last published statement of the association, and the assessor testified that the secretary replied that "he had none—had given them all away," and upon a similar request the treasurer said, after being informed by the assessor that the secretary had none left, "I am out, too." There is no evidence that the officers had the statements. The request was made of the secretary, as we understand, after the company's list had been delivered, and occurred at an interview during which the assessor informed the secretary that he would assess the company upon moneys and credits. Not obtaining the statement from the officials aforesaid, the assessor procured one from a newspaper office. The first demand made upon the secretary was that he list the company's property upon a blank furnished him. The assessor afterward asked him why he did not list moneys and credits, and the answer was that they had none. There is no doubt but that the secretary believed they had no moneys and credits, relying upon the proposition that they were not taxable, and, therefore, his reply accorded with his understanding of the law.

The court found for the plaintiff below upon both causes of action, and rendered judgment for the sum of $364.00, on April 29th, 1899, said amount including the penalty and the tax, with interest on the latter at twenty-five per cent. per annum, from October 12, 1897. The finding upon the first cause of action was erroneous, but there was no error in the finding or judgment as to the second cause of action. The judgment must, therefore, be modified by reducing the same to the amount then due for taxes and interest. The tax amounted to $120.00; and the charter (R. S., 1899, Sec. 1361) provides that delinquent taxes shall bear interest from the first Monday of October, at the rate of twenty-five per cent. per annum. Deducting the amount of the penalty, viz., $200.00, the judgment will stand for $164.00. It will be ordered, therefore, that the judgment be reduced to the sum of $164.00, and as so reduced it will be affirmed.

*Modified and affirmed.*

CORN, J., and KNIGHT, J., concur.