Theodore G. TREFREN, Marjorie Ann Trefren, John A. Trefren, Matthew J. Trefren, David W. Trefren, Paul A. Trefren, Deborah A. Miller and Julie C. Swallow, as joint tenants, Appellants (Defendants),

v.

Wayne A. LEWIS and Catherine J. Lewis, Appellees (Plaintiffs).

No. 92–259.

Supreme Court of Wyoming.

May 18, 1993.

Bernard Q. Phelan, Cheyenne, for appellants.

John B. Rogers and Rachel R. Rouse, Blythe & Lewis, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

In this action by real property owners against tax deed grantees to set aside a tax deed and determine title to real property, the initial question we must answer is whether the action is barred by the statute of limitations within which to contest the validity of a tax deed. If we determine that the action is not time barred, then we must further determine whether the district court at bench trial correctly decided that the tax deed grantees failed to comply with certain statutory notice provisions, which caused the tax deed to be void. Having determined that the district court correctly decided that the action to set aside the tax deed was not time barred and that the tax deed was void due to the tax deed grantees' failure to comply with the pertinent statutory notice provisions, we affirm.

Appellants, tax deed grantees, presented these issues:

1. Did the grantee of a tax deed comply with W.S. § 34–2–132(a) by exercising possession of the real property for the required period of time so as to bar an action to set aside the deed?

2. Must a grantee of a tax deed physically occupy real property when the original owner is provided with actual notice of the grantee's adverse claim, is charged rent, and ordered off the property by the grantee?

3. Was the original owner prejudiced by any defect in the notice procedure utilized to notify interested parties of the application for a tax deed?

4. Is the statute which sets forth the notice procedures for obtaining a tax deed constitutional?

Appellees, real property owners, succinctly rephrased the issues to be:

A. Did the appellants possess the Lewis property pursuant to a tax deed as required by Wyo.Stat. § 34–2–132(a)?

B. Was there a failure on the part of the appellants properly to notify interested parties of their application for a tax deed pursuant to Wyo.Stat. § 39–3–108?

## FACTS

In 1974, appellees, Mr. and Mrs. Wayne A. Lewis (owners), purchased from Charles Nixon (seller), under a contract for deed, the west eighty feet of lot 1 and all of lots 2, 3, 4, and 5, block 3, Longview Homesites, Laramie County, Wyoming. Neither the owners nor the seller caused any document evidencing the sale to be made of record. Under the contract, the seller and owners agreed that Rocky Mountain Federal Savings Bank (Bank) would pay the real estate taxes on the property. Owners have occupied the property continuously since 1974 to the present.

For some unknown reason, and without notice to or knowledge of the owners, Bank, which had paid the taxes from 1974 to 1982, discontinued paying the taxes in 1983 on lots 4 and 5 of the property. Consequently, in 1983 the taxes on lots 4 and 5 became delinquent.

In 1984, appellants Mr. and Mrs. Theodore G. Trefren (tax deed grantees) paid the delinquent taxes on lots 4 and 5; they have continued to pay those taxes every year since. At a tax sale held on August 2, 1984, the county treasurer issued to Mrs. Trefren a certificate of sale.

On May 9, 1988, Mrs. Trefren sent a notice of application for tax deed by certified mail to seller, as holder of the lots. The tax deed grantees did not send to the owners any notice of the application for tax deed. The notice of application to the seller was returned because the forwarding order had expired. At Mrs. Trefren's direction, a notice of application for tax deed was published in the Wyoming State Tribune on May 6, 13, and 20, 1988. On or about May 18, 1988, the tax deed grantees physically located and viewed lots 4 and 5. They saw that a continuous fence made of split rail and wire enclosed the entire property, that is, the west eighty feet of lot 1 and all of lots 2, 3, 4, and 5. The lots are described as "semi-rural." On lots 2 and 3, the owners reside on a knoll in a house surrounded by a chain link fence. A gully runs between lots 3 and 4; a bridge traverses the gully. Prairie grass grows on lots 4 and 5; a horse stall or shed sits on those lots. Owners use the shed for storage.

On May 25, 1988, about a week after the tax deed grantees physically located and viewed lots 4 and 5, they applied to the county treasurer for a tax deed. On August 25, 1988, the county treasurer issued a tax deed to them. They recorded that instrument.

In April, 1991, the owners learned of the tax deed grantees' claim to lots 4 and 5. One of the owners' neighbors saw the tax deed grantees near the gully area of the property and asked what they were doing there. The tax deed grantees replied they were measuring for a metal garage. The neighbor told them the property belonged to the owners, and the tax deed grantees said they had obtained the property for nonpayment of taxes. After leaving the tax deed grantees, the neighbor called one of the owners, relating what had happened. That evening the tax deed grantees called the owners and told them they had acquired a tax deed on lots 4 and 5. The owners posted the entire tract with "no trespass" signs. The tax deed grantees honored the signs and refrained from again entering the property.

On May 31, 1991, the owners received the tax deed grantees' letter in which they asserted their possessory interest, a five-dollar a day storage charge, and a request that the owners remove their personal property and "no trespass" signs from the lots. In August, 1991, the owners received the tax deed grantees' letter in which they demanded payment of $340 for rent. In

reply, owners' attorney sent a letter to the tax deed grantees threatening litigation if they refused the owners' offer to reimburse them for the money paid on the delinquent taxes.

On December 6, 1991, the owners filed this action to set aside the tax deed. The tax deed grantees answered, pleading a general denial and an affirmative defense that the statute of limitations in WYO.STAT. § 34–2–132 (1990) barred the action; the tax deed grantees' answer also asserted a counterclaim seeking quiet title under WYO. STAT. § 1–32–201 (1988).

Following discovery, each party moved for summary judgment; the trial court denied each after a hearing and conducted a bench trial on August 28, 1992. On October 7, 1992, the trial court issued its decision letter announcing a decision in favor of the owners. Judgment was entered on October 19, 1992. The tax deed grantees timely filed their notice of appeal.

## DISCUSSION

1. *Statute of Limitations.*

 The initial question we must answer is whether the owners' action to set aside the tax deed is barred under the language of WYO.STAT. § 34–2–132(a) (1990):

(a) No action, suit or other proceeding shall be commenced by the former owner to set aside, declare invalid or redeem from a tax deed or the sale, forfeiture, foreclosure or other proceeding upon which it is based or to recover possession, quiet title or otherwise litigate or contest the title of the grantee, if:

(i) Two (2) years or more have elapsed after the date of recording the deed in the office of the county clerk and ex officio register of deeds for the county in which the real estate described in the deed is situated; and

(ii) The grantee has been in possession of the real estate continuously for a period of at least six (6) months, at any time after one (1) year and six (6) months have elapsed since the date of recording of the tax· deed.

The parties agree that the requirement of subparagraph (i) has been met since the owners filed the December, 1991 action more than two years after the tax deed grantees recorded the tax deed in August, 1988.

The parties' battle line is drawn at whether the requirement of subparagraph (ii) has been met. Specifically, they debate whether the tax deed grantees have "been in possession" of lots 4 and 5 for a period of at least six months. The resolution of their debate depends upon the meaning of the statutory language "in possession." The tax deed grantees contend that those words do not mean actual physical entry upon and physical occupation of the lots in question. The owners assert, and the district court held, that those words mean exactly that. And so it is that the sharp point of this debate is a question of statutory construction which is, of course, a question of law. If the district court's conclusion of law is correct, we affirm; if it is incorrect, we correct it. *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993).

In *Parker* this court comprehensively reviewed statutory construction methodology. That methodology shall be applied here to the extent necessary to achieve our primary objective of ascertaining and giving effect to the lawgiver's intent. *Parker*, at 1040.

We begin with the words. The legislature has supplied its own dictionary. The word "possession" is defined as follows:

"Possession" refers to *possession,* and to the extent of possession, *as determined by the rules applicable in determining the existence of adverse possession under a written instrument constituting color of title* and includes possession by tenant or agent.

WYO.STAT. § 34–2–131(a)(iv) (1990) (emphasis added). Thus, we must look to "the rules applicable in determining the existence of adverse possession under a written instrument constituting color of title." It is well settled Wyoming law that adverse possession of real property is

an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action. The *possession* must be hostile and under a claim of right; it *must be actual, open, notorious, exclusive, and continuous.* * * * [W]here color of title is not necessary to the acquisition of title by adverse possession, its absence has the effect of limiting the right acquired to the land *actually occupied.* But with color of title there may be in connection with *actual possession of a part* constructive possession of · the entire tract described and purported to be conveyed. There is in this state no statute requiring adverse possession to be founded upon color of title.

*Bryant v. Cadle*, 18 Wyo. 64, 86, 104 P. 23, 27 (1909) (emphasis added) (citations omitted); *see also, City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908 (1929); and *Kranenberg v. Meadowbrook Lodge, Inc.*, 623· P.2d 1196, 1199 (Wyo.1981).

We have found no Wyoming decision in which we have said that adverse possession can exist without the claimant's physical entry onto the land followed by some kind of physical occupancy of the land. And, we have found no Wyoming decision in which we have said that adverse possession can exist even though another claiming an interest has physically entered and is physically occupying the land. The presence of such other claimant on the land destroys the requisite element of exclusivity.

The tax deed grantees rely on an excerpt from *Sturm* for their contention that physical entry onto and physical occupation of the land is not an element of "possession." That excerpt is as follows:

The prime object in prescribing how such adverse possession shall be made manifest, of what elements or requisites it shall be composed, is to advise the real owner that his ownership is in danger, and the law has deemed the time fixed as sufficiently long so as to give him ample opportunity to protect his right; and if he fails to do so, when thus advised, within the time fixed, he is considered as having acquiesced in the transfer of ownership.

*Sturm*, 39 Wyo. at 517, 273 P. at 915 (citation omitted).

Relying on this passage, the tax deed grantees reason that the primary objective of requiring open, notorious, and hostile "possession" is not to physically occupy the land, but is to give "notice" to the real owner that the statute is running. From this, they conclude that it is "notice" that is at the heart of the requirement of "possession," not "occupancy."

The tax deed grantees are correct in noting that "notice" to the real owner that his or her ownership is in danger is the key. What they have lost sight of, however, is the manner in which the law requires such notice to be imparted. The law has prescribed rather precisely, in Chief Justice Blume's words in *Sturm*, "how such adverse possession shall be made manifest, of what elements or requisites it shall be composed." *Sturm*, 39 Wyo. at 517, 273 P. at 915. It is in this particular regard that the passage relied upon by tax deed grantees continues and reads:

Bearing this in mind, it is a reasonable rule that when a man has *occupied* a piece of ground * * * for the period prescribed by law *openly, notoriously, exclusively and in a manner plainly indicating that he acted as owner thereof,* the presumption should be, in the absence of explanatory circumstances showing the contrary, that he *occupied* the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right. It may not always be plain whether the *occupancy and use of the premises* was as owner or not. * * * *[T]he greater the use and the more complete the occupancy,* the more convincing the acts as owner will be.

*Sturm*, 39 Wyo. at 517, 273 P. at 915. (emphasis added).

Wyoming law on this particular point is in step with the law elsewhere:

In order that the statute of limitations shall run against the right to recover land, it is necessary, not only that the person rightfully entitled be out of the actual possession, but also that there be an *entry upon the land* by another. The statute does not run as against the true owner in favor of one who, while having what purports to be a conveyance of the land, or the paper title, has *never entered on the land.* Nor is an *entry* upon the land sufficient in itself, but it *must be followed by such acts of dominion over the land* as will constitute what the law regards as actual possession of the land.

4 HERBERT T. TIFFANY, THE LAW OF REAL PROPERTY § 1137 (3d ed. 1975) (emphasis added).

Our law is also in accord with this statement:

What is sufficient to constitute actual possession of the land depends upon the character and purposes for which it is adapted, the size and location of the land and all of the circumstances of the case. It involves, as a general rule, the doing of acts of dominion on the land, sufficiently pronounced and continuous in character to charge the owner with notice that an adverse claim to the land is asserted.

Tiffany, *supra,* § 1138.

Although neither actual occupancy nor residence on the land for any definite time period is necessary to constitute actual possession, the claimant must engage in physical activity on the land which amounts to an assertion of dominion. *Id.* "The question whether, in any particular case, there was an actual possession of the land, is ordinarily one of fact * * * or * * * a mixed question of law and fact." Tiffany, *supra,* § 1139; *accord, Sturm,* 39 Wyo. at 518, 273 P. at 916.

From our review of the law, we hold that the words "in possession" as used in WYO. STAT. § 34-2-132(a)(ii) mean an actual physical entry on the land. Further, physical entry must be followed by the doing of acts of dominion on the land of such kind and in such manner as to indicate plainly that the entrant is acting as the owner thereof would act, considering the character of the land and the purposes for which it is adapted, the size and location of the land, and all of the attendant circumstances.

In light of the evidence of record, it is clear that although the tax deed grantees on one occasion briefly entered the lots to measure for a storage building, such entry was not followed by their doing acts of dominion on those lots of such kind and in such manner as to indicate plainly that they were acting as the owner. The district court, therefore, correctly decided that they had not been in possession of the lots for a period of at least six months and that the owners' action was not time barred.

### 2. Compliance with statutory notice provisions.

 Having determined that the owners' action to set aside the tax deed was not time barred, we next consider whether the district court correctly decided that the tax deed grantees failed to comply with certain statutory notice provisions. The tax deed grantees challenge the district court's decision that they (1) failed to serve written or printed notice of the application to the county treasurer for a tax deed on the persons in actual possession or occupancy of the lots, namely, the owners; and (2) failed to include in the published notice a statement as to when they purchased the lots and when they would apply for a tax deed. The source of these notice requirements is WYO.STAT. § 39-3-108 (1990).[1]

---

**1.** (d) Holders of certificates of purchase of real property sold for delinquent taxes, including a holder's or county's assigns, upon application for a treasurer's deed therefor shall furnish proof to the county treasurer:

 (i) That at least three (3) months prior to the application a written or printed notice was served on each person in actual possession or occupancy of the real property and

the person in whose name the property was taxed or assessed if upon diligent inquiry the persons can be found in the county; or

 (ii) If no person is in actual possession or occupancy of the property and if the person in whose name the property was taxed or assessed cannot be found in the county, that notice was published in a newspaper printed in the county, or if no newspaper is printed in

If we affirm the district court's decision that the tax deed grantees failed to serve notice on the owners who were in actual possession or occupancy of the lots, we need not address the sufficiency of the published notice. In WYO.STAT. § 39–3–108(d)(i) the legislature placed upon the shoulders of the tax deed grantee a duty of diligent inquiry to find and serve "each person in actual possession or occupancy of the real property" to be identified in the tax deed. The district court found from the evidence that the owners had been in actual possession or occupancy of lots 4 and 5 continuously since 1974 and that the tax deed grantees had not made diligent inquiry to find them in the county. Consequently, the district court held that the tax deed grantees had failed to comply with this particular notice requirement. We agree.

Considering that the tax deed grantees paid the delinquent taxes and obtained a certificate of sale in 1984, they demonstrated a remarkable lack of curiosity about the lots for the next six years. By their own testimony, they did not locate and view the property until about a week before they made application for the tax deed. On that occasion they entered the property by way of the only entrance possible, the maintained driveway leading to the owners' residence. The tax deed grantees could plainly see that the entire property was enclosed by a split rail and wire fence. The shed situated on lots 4 and 5 contained the owners' wheelbarrows, spare windows, barrels, and horse troughs. During the summer months, the owners would regularly mow the prairie grass growing on the property,

including lots 4 and 5. The record reveals that in the nearly six-year period from 1984 to 1990, just before the tax deed grantees applied for the tax deed, they never inquired of the residents of the house adjacent to lots 4 and 5, namely, the owners, about the lots. We find ample evidence to support the district court's decision. Having so decided, we need not address the question of the sufficiency of the published notice.

Affirmed.

the county, then in a newspaper printed in Wyoming nearest to the county seat of the county in which the property is located. The notice shall be published once a week for three (3) weeks, the first publication not more than five (5) months and the last publication not more than three (3) months prior to the application; and

(iii) That notice was sent by certified or registered mail to the record owner and mortgagees, if any, of the real property if their addresses are known or disclosed by the public records.

(e) Notices required by this section shall contain the following:

(i) When the applicant purchased the real property;

(ii) In whose name the real property was taxed;

(iii) A description of the real property;

(iv) The year the property was taxed or assessed;

(v) When the time of redemption will expire;

(vi) When application for a tax deed will be made;

(vii) The amount of any special assessments for local or public improvements.