UNION TELEPHONE COMPANY, INC., Appellant (Petitioner),

v.

WYOMING PUBLIC SERVICE COMMIS-SION; Bill Tucker, John R. Smyth, and Stephen N. Ellenbecker, in their official capacities as Commissioners of the Wyoming Public Service Commission, Appellees (Respondents).

No. 95–21.

Supreme Court of Wyoming.

Nov. 15, 1995.

Bruce S. Asay of Murane & Bostwick, Cheyenne; Argument presented by Mr. Asay, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Kristin H. Lee, Assistant Attorney General. Argument presented by Ms. Lee, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Union Telephone Company, Inc. (Union) appeals from an order issued by the Wyoming Public Service Commission (PSC) re-

quiring Union to provide 10XXX[1] access for intrastate, intraLATA[2] calls.

We affirm.

Five issues are presented for review, delineated by the PSC as:

I. Is Union bound by an agreement to provide equal access on an intraLATA basis through the use of 10XXX to its customers?

II. Did the PSC violate Union's constitutional rights under the Fifth and Fourteenth Amendments when it issued an *Order to Show Cause* to Union?

III. Did the PSC err when it ordered Union to provide 10XXX equal access by order instead of rulemaking?

IV. Did the PSC's investigation of complaints regarding equal access deprive Union of a fair hearing?

V. Did the PSC require Union to provide a service without compensation?

### FACTS

On May 8, 1989, Union filed an application with the PSC to provide intrastate telecommunications services. That application was granted by order dated August 6, 1993. In that order, the PSC noted:

The application of Union seeks to provide intrastate telecommunications services originating within Union's land line telephone certificated area and terminating on a statewide basis, both on an intraLATA and interLATA basis. Union will provide access to other toll carriers through the use of 10XXX for interLATA intrastate traffic and will use only carriers that have been certificated by this Commission for its pre-subscription ballot, except for Cable and Wireless, *pursuant to a letter of understanding entered into by Union and the Consumer Representative Staff of the Wyoming Public Service Commission, which is attached hereto and incorporated by this reference.*

(Emphasis added.) The Letter of Understanding incorporated by that order provided, in part:

3. Union Telephone will provide access to other toll carriers through the use of 10XXX for interLATA intrastate traffic.

4. Based on the understanding that US West Communications provides access to other intraLATA toll carriers through the use of 10XXX, in offices that have been converted to equal access, Union will do the same as US West and provide 10XXX access for intraLATA traffic.

The August 6, 1993 order went on to state that Union's application to provide telecommunications service within its land line certificated area and terminating on a statewide basis on an interLATA and intraLATA basis was approved subject to the conditions in the order.

It became apparent that Union was not providing 10XXX service on an intraLATA basis, so on June 17, 1994, the PSC issued an Order to Show Cause. A hearing was scheduled for July 11, 1994. Before the hearing, Union's counsel moved for a continuance, which was denied.

Following the hearing, the PSC issued its Memorandum Opinion, Findings and Order on October 13, 1994. PSC ordered Union to provide the 10XXX service, relying on the August 6, 1993 order. Union appealed that order to the district court, which certified the case to us.

### STANDARD OF REVIEW

Cases certified to this court pursuant W.R.A.P. 12.09 are reviewed according to the appellate standards applicable to the court of

---

1. 10XXX is a five digit access code that gives a customer the option of selecting another carrier for their call. See *American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F.Supp. 221, 231 n. 2 (D.Mass.1995); *Allnet Communications Serv., Inc. v. Pub. Util. Comm'n*, 70 Ohio St.3d 202, 638 N.E.2d 516, 518 (1994).

2. LATA stands for Local Access and Transport Area. After the break up of AT & T, the country was divided up into LATAs which generally encompassed a city or other identifiable area. LATAs were intended to act as boundaries on the operating areas of the Baby Bells. A LATA should not be confused with a local exchange area, since calls within a LATA may be either local or long distance in nature. See *United States v. Western Elec. Co., Inc.*, 569 F.Supp. 990, 993 n. 9 (1983).

the first instance. *Hepp v. State ex rel. Worker's Compensation Div.*, 881 P.2d 1076, 1077 (Wyo.1994). The scope of our review is defined by W.S. 16–3–114(c) (1990).

The reviewing court shall:

    \*     \*     \*     \*     \*     \*

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

    (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

    (B) Contrary to constitutional right, power, privilege or immunity;

    (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

    (D) Without observance of procedure required by law; or

    (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

### DISCUSSION

█ The issue in this case is whether the PSC can require Union to provide 10XXX service on a intrastate intraLATA basis. Union argues that the PSC lacks the authority to require such service absent general rulemaking procedures. Union further claims that the PSC's action violates the Constitutional guarantees of equal protection and taking property without compensation.

We, however, perceive the issue to be much simpler in nature. The question is whether the order issued by the PSC on August 6, 1993, incorporated the Letter of Understanding (hereinafter "Letter") in its entirety and whether, in that Letter, Union agreed to provide the 10XXX service on an intrastate intraLATA basis. If the answer to the question is yes, then Union is bound by the order since it never appealed it. If no, then the PSC did not have the authority to order Union to provide the service.

A careful review of the August 6, 1993 order and the Letter has convinced us that the parties' intent, as embodied in the order, was that Union would provide 10XXX service on an intrastate intraLATA basis and that by failing to appeal that order, Union is estopped from complaining about the PSC's efforts to enforce it.

While hardly a model of draftsmanship, the August 6, 1993 order incorporated the Letter in its entirety: "pursuant to a letter of understanding \* \* \* which is attached hereto and incorporated by this reference." In the context in which that clause appears, it could naturally be read to apply only to interLATA calls. However, as we noted above, the order also required Union to provide telecommunications services within the state of Wyoming on both an intraLATA as well as an interLATA basis subject to the terms and conditions stated in the order. An ambiguity arises here since there are no other "terms and conditions" in the order which could apply to service on an intraLATA basis. Only if one reads the order as incorporating the Letter in its entirety and not limited to interLATA service can one find any "terms and conditions." The "terms and conditions" contained within the Letter in reference to intraLATA service state that Union will provide 10XXX access for that service.

After examining the order—even with its shortcomings—and the Letter, the only conclusion one can reach is that the intent of the parties at that time was to incorporate the Letter as a whole and, accordingly, that Union agreed to provide 10XXX access on its intraLATA service. Union's equal protection, takings and rulemaking arguments are, therefore, beside the point because, by agreeing to provide the service and failing to appeal the August 6, 1993 order, it is bound by the terms of that order.

Finally, Union claims that the proceedings against it were prejudiced by ex parte contacts between the PSC and its investigating staff and that it was denied a fair hearing as the result had been predetermined by the PSC. The ex parte contacts complained of by Union were complaints filed by customers and competitors. Some of those complaints were irrelevant to the issues presented in this case, so we fail to see how any prejudice could result. Union complains that it was not notified of the other complaints at the

time they were made and that they were the subject of ongoing proceedings and of the Order to Show to Cause.

The PSC has the power to investigate compliance with the provisions of the Wyoming Public Utility Act and its orders. W.S. 37–2–117 (1977 Rpl.). The PSC also has the power to investigate complaints, require a utility to respond or to hold hearings based on complaints. PSC Procedural Rules and Special Regulations § 114. There is nothing in the record which demonstrates that Union was not provided with a copy of all the complaints upon which the Order to Show Cause was based nor is there anything to suggest that Union was not provided an opportunity to respond to them at the hearing. We find the PSC's actions to be lawful and Union's contentions without merit.

■ Similarly, we conclude that bias of the PSC members alleged by Union is without foundation in the record. The statements of the commission members cited by Union do not demonstrate bias. For example, Union cited the following statements made by the PSC chairman:

> [Union counsel], I usually don't respond to a closing, but I just find Union's response, the testimony, your opening, your closing, very empty, hollow, not very responsive to the show cause, the direct spirit as well as the letter of the show cause order. And that was to come in here and tell us why you have not responded to a lawful order, or in the alternative there has been no motion or application filed by Union saying that you can't, "That's unlawful," or "We should have a hearing, we should have a discussion about this, we should have something else."
>
> There has been nothing like that whatsoever, even in the face of the issuance of this show cause there was not such a thing that came to this Commission.
>
> And so I find the general response, which has just been like a broken record, that "We should have a rule making, we should have a rule making, we should have a rule making," to not be very persuasive at all.

This is not evidence of predetermined bias on the part of the PSC. The chairman was simply expressing exasperation with Union's approach to the hearing, where, like on appeal, Union made arguments which were not germane to the issue. There is no evidence that the PSC had predetermined the result in this case.

## CONCLUSION

We find that the August 6, 1993 order issued by the PSC required Union to provide 10XXX service to its customers. By failing to appeal that order, Union is bound by it. The decision of the PSC is affirmed.