PETROLEUM INC., Appellant
(Petitioner),

v.

STATE of Wyoming ex rel. STATE
BOARD OF EQUALIZATION,
Appellee (Respondent).

No. 98–226.

Supreme Court of Wyoming.

July 16, 1999.

Thomas F. Reese of Brown, Drew, Massey & Sullivan, Casper, Wyoming, Representing Appellant.

Gay V. Woodhouse, Chief Deputy Attorney General; Michael L. Hubbard, Deputy Attorney General; and Harry D. Ivey, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Petroleum Inc. petitioned the district court for a review of the State Board of Equalization's order which affirmed the Department of Revenue's assessment of a penalty against it. The district court certified the case to the Wyoming Supreme Court.

We affirm the State Board of Equalization's decision.

## ISSUES

Petroleum Inc. presents two related issues for our review:

1. Have the Department of Revenue and State Board of Equalization acted contrary to law in determining the amount of penalty which could be assessed against the Appellant, Petroleum, Inc., pursuant [to] WYO. STAT. ANN. § 39–2–201 (Michie 1997) and WYO. STAT. ANN. § 39–5–101 (Michie 1997)?

2. Was the action of the Department of Revenue and the State Board of Equalization arbitrary, capricious and an abuse of discretion or otherwise not in accordance with the law?

## FACTS

Oil and gas producers were required by statute to file annual production reports with the Department of Revenue.[1] The deadline for filing the reports for the 1994 production year was February 27, 1995. Petroleum Inc. produced oil and gas in Wyoming during that production year, but it did not file the required reports for several of its wells until September 7, 1995.

Pursuant to Wyo. Stat. Ann. § 39–5–101(g) (Michie 1994) (repealed 1998), the Department of Revenue assessed a $169,652 penalty against Petroleum Inc. because of its delinquent filings. The Department of Revenue subsequently reviewed the circumstances surrounding Petroleum Inc.'s late filings and reduced the penalty assessment by fifty percent to $84,826.

Petroleum Inc. appealed to the State Board of Equalization, and the board affirmed the Department of Revenue's decision. Petroleum Inc. filed a petition for a review of the State Board of Equalization's order with the district court, and the district

court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

 When we review cases which have been certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *Union Telephone Company, Inc. v. Wyoming Public Service Commission*, 907 P.2d 340, 341–42 (Wyo.1995). Wyo. Stat. Ann. § 16–3–114(c) (LEXIS 1999) governs judicial review of administrative decisions. W.R.A.P. 12.09(a); *Everheart v. S & L Industrial*, 957 P.2d 847, 851 (Wyo.1998).

 The issues presented in this case require us to interpret § 39–5–101(g). Statutory interpretation is a question of law. *Newton v. State ex rel. Wyoming Workers' Compensation Division*, 922 P.2d 863, 864 (Wyo.1996); *Trefren v. Lewis*, 852 P.2d 323, 325 (Wyo.1993). We affirm an agency's conclusions of law when they are in accordance with the law. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors. *Weaver v. Cost Cutters*, 953 P.2d 851, 855 (Wyo.1998); *Gneiting v. State ex rel. Wyoming Workers' Compensation Division*, 897 P.2d 1306, 1308 (Wyo.1995).

## DISCUSSION

Petroleum Inc. claims that the State Board of Equalization misinterpreted § 39–5–101(g) when it affirmed the Department of Revenue's penalty assessment against it. The state argues that the State Board of Equalization's interpretation of the statute was consistent with the plain language of the statute

---

1. Wyo. Stat. Ann. § 39–2–201 (Michie 1994) (repealed 1998) provided in relevant part:
 (a) The department shall annually value and assess the following property at its fair market value for taxation:
 (i) The gross product of all mines and mining claims;
 . . . .
 (b) Annually, on or before the dates hereafter indicated, any person whose property is

subject to subsection (a) of this section shall sign under oath and submit a statement listing the information relative to the property and affairs of the company as the department may require to assess the property:
 (i) For mines and mining claims, the same date as prescribed by W.S. 39–6–304(a) for December production.

and the legislature's intent. We agree with the state.

■ Our rules of statutory interpretation are well established. We first decide whether the statute is clear or ambiguous. *Lyles v. State ex rel. Division of Workers' Compensation,* 957 P.2d 843, 845 (Wyo.1998). This Court makes that determination as a matter of law. *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1043 (Wyo.1993); *Allied–Signal, Inc. v. Wyoming State Board of Equalization,* 813 P.2d 214, 220 (Wyo.1991). A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc.,* 813 P.2d at 220. A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20.

■ If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. *Lyles,* 957 P.2d at 846; *Gunderson v. State,* 925 P.2d 1300, 1304 (Wyo.1996).

> We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.*

*State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo. 1994). If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent. *Parker Land and Cattle Company,* 845 P.2d at 1044.

> "[I]n ascertaining the legislative intent in enacting a statute ... the court ... must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and

circumstances that would enable the court intelligently to determine the intention of the lawmaking body."

*Id.* (quoting *Carter v. Thompson Realty Co.,* 58 Wyo. 279, 131 P.2d 297, 299 (1942)).

■ We generally defer to the construction placed on a statute by the agency that is charged with its execution, provided, however, that the agency's construction does not conflict with the legislature's intent. *Laramie County Board of Equalization v. Wyoming State Board of Equalization,* 915 P.2d 1184, 1190 (Wyo.1996). In this case, we are also cognizant of the principle that statutes which are penal in character are generally strictly construed. *Meerscheidt v. State,* 931 P.2d 220, 224 (Wyo.1997); *Albany Mut. Bldg. Ass'n v. City of Laramie,* 10 Wyo. 54, 65 P. 1011, 1019 (1901).

Section 39–5–101(g) stated in pertinent part:

> (g) If any person fails to file the report required by W.S. 39–2–201(b)(i) by the due date or any extension thereof, the department may impose a penalty equal to a total of one percent (1%) of the taxable value of the production from the well, mine or mining claim but not to exceed five thousand dollars ($5,000.00) for each calendar month or portion thereof that the report or information is late.

Petroleum Inc. claims that, under § 39–5–101(g), the Department of Revenue had the authority to penalize it up to a maximum of $5,000 per month and that the Department of Revenue could not assess a separate penalty for each well. The state maintains that § 39–5–101(g) allowed the Department of Revenue to assess a penalty of up to $5,000 per month on each well for failure to file the required reports.

■ We look at the arrangement and connection of the words in a statute to determine the statute's meaning. " 'The reader naturally assumes that the parts of a sentence that are placed next to each other are logically related to each other.' " *Management Council of Wyoming Legislature v. Geringer,* 953 P.2d 839, 844 (Wyo.1998) (quoting John M. Kierzek & Walker Gibson, The MacMillian Handbook of English at 414

(6th ed.1977)). In this case, the "production from the well, mine or mining claim" language was directly followed by the phrase "but not to exceed five thousand dollars," and the term "well" was stated in the singular. Section 39–5–101(g). The language of the statute suggested, therefore, that the Department of Revenue was authorized to assess a penalty of up to $5,000 per month for each well. Nevertheless, we agree that the statutory language is arguably susceptible to the construction asserted by Petroleum Inc. We conclude, therefore, that the statute is ambiguous and that extrinsic aids of interpretation will be helpful to us in determining the legislature's intent.

 In ascertaining the legislature's intent, we look at the mischief that the statute was intended to cure. In other words, we view the statute in the light of the object and purpose that the legislature intended to accomplish when it enacted the statute. *State Board of Equalization v. Tenneco Oil Company*, 694 P.2d 97, 100 (Wyo.1985). The purpose of the penalty provision was to encourage mineral producers to comply in a timely fashion with the reporting requirement of Wyo. Stat. Ann. § 39–2–201(b)(i) (Michie 1997) (repealed 1998). The Department of Revenue used the reports to determine the fair market value of the gross mineral production for taxation purposes. Wyo. Stat. Ann. § 39–2–201(a) (Michie 1994) (repealed 1998). The legislature specifically linked the amount of the penalty to the value of the mineral production by stating that the amount of the penalty was one percent of the taxable value of a well's production but was not to exceed $5,000 per month. Section 39–5–101(g). The number of wells obviously affected the total value of a taxpayer's mineral production and, accordingly, the amount of taxes assessed. If the $5,000 limitation did not apply to each well, a person who had not reported on a single well and a person who had not reported on several wells would have been subject to the same penalty. If that were true, the amount of the penalty would not have corresponded to the value of the mineral production. That obviously was not

what the legislature intended when it enacted the penalty provision.

Taking into consideration the arrangement and connection of the words in § 39–5–101(g) and the legislature's purpose in enacting the statute, we conclude that the Department of Revenue could assess a maximum penalty of $5,000 per month on each well whose report was delinquent. The State Board of Equalization's interpretation of the statute was consistent with the legislature's intent and is, therefore, entitled to our deference. The State Board of Equalization's affirmance of the penalty assessment against Petroleum Inc. was not arbitrary, capricious, or otherwise contrary to the law.

Affirmed.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I am persuaded that the Findings of Fact, Conclusions of Law, Decision and Order of the State Board of Equalization should be reversed, and I dissent from the resolution of this case according to the majority opinion. The parties both contend that the statutory scheme is clear and unambiguous, but, in the face of those arguments, the majority opinion concludes that Wyo. Stat. Ann. § 39–5–101(g) (Michie 1997) is ambiguous. The finding of ambiguity by the majority stretches both the doctrine of ambiguity and the language of the statute far beyond the tensile strength of either.

The only language of Wyo. Stat. Ann. § 39–2–201(b) (Michie 1997), which appears to possibly require a report from Petroleum, Inc. is:

> (b) Annually, on or before the dates hereafter indicated, any person whose property is subject to subsection (a) of this section shall sign under oath and submit *a statement* listing the information relative to the property and affairs of the company as the department may require to assess the property:
>
> (i) For mines and mining claims, the same date as prescribed by W.S. 39–6–304(a) for December production.[1]

---

1. Wyo. Stat. Ann. § 39–6–304(a) (Michie 1997) provided, in pertinent part: "The monthly tax

reports and payments are due on or before the twenty-fifth day of the second month following

(Emphasis added.) No one appears to question that this is the report alluded to in Wyo. Stat. Ann. § 39–5–101(g), where it is provided in pertinent part:

(g) If any person fails to file the *report* required by W.S. 39–2–201(b)(i) by the due date or any extension thereof, *the department may impose a penalty* equal to a total of one percent (1%) of the taxable value of the production from the well, mine or mining claim *but not to exceed five thousand dollars ($5,000) for each calendar month or portion thereof that the report or information is late.*

(Emphasis added.)

This statute clearly and unequivocally sets forth a limitation of $5,000 per month for each calendar month that the report or information is late. Only one report is required, and that report could encompass as many producing wells as the person required to file the report owns or operates. The State Board of Equalization obviously failed to consider any limitation contained in the statute, instead stating in its Conclusions of Law:

14. Petitioner's interpretation of Wyo. Stat. § 39–5–101(g) suggesting a maximum penalty of only $5,000.00 per month, may be assessed against any one company for failure to file reports or required information, does not comport with the clear and unambiguous language of the statute. The statute clearly provides for "a penalty equal to one percent (1%) of the taxable value of *the production from the well . . . .*" In this matter, several wells were assessed.

(Emphasis in original.) The State Board of Equalization wrote out of the statute a clearly expressed limitation, and the majority of this Court is following lockstep in the path of the State Board of Equalization.

Perhaps the fallacy in the reasoning of the majority is best illustrated in its penultimate paragraph. The majority assumes that the penalty relates to each separate well, but the statute does not precisely so state, nor does the statute require the filing of a separate report for each well. The State Board of

the month of production." Because February 25, 1995 was a Saturday, the report from Petro-

Equalization alludes to reports, but any requirement of more than one report seems to clearly exceed the statutory mandate. The majority opinion justifies its interpretation of the statute by noting that:

If the $5,000 limitation did not apply to each well, a person who had not reported on a single well and a person who had not reported on several wells would have been subject to the same penalty. If that were true, the amount of the penalty would not have corresponded to the value of the mineral production. That obviously was not what the legislature intended when it enacted the penalty provision.

Remember that the statutory language provides "a penalty equal to a total of one percent (1%) of the taxable value of the production from the well, mine or mining claim but not to exceed five thousand dollars ($5,000) for each calendar month or portion thereof that the report or information is late." Wyo. Stat. Ann. § 39–5–101(g). In its order, the State Board of Equalization accounted for twenty-two wells. If each well is to be considered separately, the maximum monthly penalty for Petroleum, Inc. would be $110,000. Under the majority interpretation, the person who owned the largest coal mine in the State of Wyoming and failed to file the report would pay a maximum penalty of $5,000 per month for each month that the report was late. That penalty would not in any way correspond to the value of the mineral production. By contrast, the owner of several, say five, gravel pits would have to pay a maximum penalty of $25,000 per month for each month that the report was late. Even though that penalty would assume a production from the gravel pits of more than $2,500,000, that might be far less than the value of the production from a single coal mine. This simple example illustrates not only a disparity between mineral producers although described in the same statute, but also a disparity within mineral producers in the same class. Such a result is a far cry from the equality and uniformity demanded by Wyo. Const. art. 15, § 11(d).

leum, Inc. was due on February 27, 1995.

Other categories of taxpayers are identified in Wyo. Stat. Ann. § 39–2–201, and they also are required to file "a statement listing the information relative to the property and affairs of the company as the department may require to assess the property * * *." In our endeavor to discern the intent of the legislature with respect to penalties, it is useful to consider how these other categories of taxpayers are treated. Rail car companies, pipeline companies, electric utilities, telephone and telegraph companies, other public utilities and railroad companies are subject to a penalty for failing to file the required statement of not more than $500.00 plus not more than $100.00 for each day's failure to file the statement, a maximum of $3,600.00 for the first month, and not more than $3,100 per month thereafter. Wyo. Stat. Ann. § 39–5–101(e). No good reason appears for assuming that the legislature intended to impose the significantly higher sanction on mineral producers that the majority opinion approves.

I am satisfied that this statutory scheme clearly and unambiguously provides for a maximum penalty of $5,000 per month for failure to file a report, and the State Board of Equalization committed an error of law in construing the statute otherwise. I would reverse the State Board of Equalization with instruction to enter an order consistent with the correct construction of the statute which would provide a maximum penalty of $35,000.