WILLISTON BASIN INTERSTATE PIPELINE COMPANY, Appellant (Petitioner),

v.

WYOMING PUBLIC SERVICE COMMIS-SION, Steve Ellenbecker and Kristin Lee, in their official capacities as Commissioners of the Wyoming Public Service Commission; and NG Transmission and Wyoming Gas Company, Appellees (Respondents).

No. 98–300.

Supreme Court of Wyoming.

Feb. 9, 2000.

Representing Appellant: Bruce S. Asay of Associated Legal Group,LLC, Cheyenne, Wyoming: Robert T. Hall, III, of Thelen Reid & Priest, LLP, Washington, DC Argument by Mr. Asay.

Representing Appellees NG Transmission and Wyoming Gas Company: Dale W. Cottam and Thomas A. Nicholas, III, of Hirst & Applegate, P.C., Cheyenne, Wyoming. Argument by Mr. Cottam.

Representing Appellee Wyoming Public Service Commission: Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; Harry D. Ivey, Assistant Attorney General. Argument by Mr. Ivey.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ

THOMAS, Justice.

The primary issue presented by Williston Basin Interstate Pipeline Company (Williston) is whether the Wyoming Public Service Commission (PSC) lacked authority under the law to issue a certificate of public convenience and necessity for an intrastate pipeline constructed before any application for the certificate. Other issues are raised relating to the rate approved for transmission of natural gas through the pipeline; the sufficiency of procedural due process concerning a pre-hearing procedural order; the sufficiency of the evidence to support the approval of the pipeline application; and error in allegedly refusing to review a cost study produced in response to an interim order of the PSC. Williston perceives the respondent to be the PSC, but NG Transmission (NGT) and Wyoming Gas Company (WGC) appear as respondents although both are simply divisions of Natural Gas Processing Company (NGP). We are satisfied that the PSC is not foreclosed from granting a certificate of public convenience and necessity under these circumstances, and the record in this case supports none of the other claims of error. The Memorandum Opinion, Findings and Order, issued by the PSC on June 29, 1998, is affirmed in all respects.

## ISSUES

This statement of the issues is found in Williston's Brief of Petitioner:

*ISSUE ONE:* Is the Commission's approval of a certificate of public convenience and necessity for NG Transmission contrary to statutory requirements?

a. The construction of a natural gas pipeline by NG Transmission without Commission authority was contrary to law.

b. The construction of natural gas pipelines by NG Transmission was unnecessary and duplicative.

c. Approval of the certificate was not in the best interest of the public.

*ISSUE TWO:* Were the transportation rates approved for NG Transmission by the Wyoming Public Service Commission excessive, unreasonable and not supported by substantial evidence?

a. It was unlawful for the Commission to retroactively approve a rate for the period March 1, 1995—December 31, 1996.

b. The Commission incorrectly accepted NG Transmission's proposed $0.50 rate from January 1, 1997 forward.

c. The Commission erred in its apparent acceptance of cost figures from NGT based on unsupported cost figures of $7,000 per month.

d. The Commission erred in its apparent acceptance of NG Transmission's use of an 11.3% rate of return.

e. The Commission erred in its apparent acceptance of NG Transmission's proposed depreciation rate.

*ISSUE THREE:* Was the decision by the Commission in approving the application of NG Transmission supported in the record?

*ISSUE FOUR:* Did the Commission's pre-hearing procedural order deprive Williston Basin of procedural due process?

*ISSUE FIVE:* Did the Commission err in refusing to review the cost study produced in response to the interim order?

This Statement of the Issues is found in the Brief of Respondents NG Transmission and Wyoming Gas Company:

A. Is the scope of review sought by WBI permitted under the Wyoming Administrative Procedures Act, the Wyoming Rules of Appellate Procedure, and Wyoming case law?

B. Was the Public Service Commission's decision to award NG Transmission a Certificate of Public Convenience and Necessity in accordance with Wyoming law and supported by substantial evidence?

C. Is NG Transmission's natural gas transportation rate of $.50 per dekatherm fair and reasonable, and is there substantial evidence to support such a rate?

D. Was the contested case procedure and two-day hearing conducted in accordance with Wyoming law?

This Statement of the Issues is found in the Brief of Respondent Wyoming Public Service Commission:

1. Whether the Commission's issuance of a certificate of convenience and necessity was in accordance with Wyoming law?

2. Were the rates approved by the Commission just and reasonable and supported by substantial evidence?

3. Did the Commission correctly enter findings of fact and conclusions of law in its Memorandum Opinion, Findings and Order issued June 29, 1998?

4. Whether Williston Basin was provided all of the due process required by law?

5. Whether substantial evidence exists to support the Commission's factual findings?

Williston raises no additional issues in its reply brief.

### FACTS

Williston is an interstate natural gas pipeline engaged in the production, distribution, transportation, and storage of natural gas in Wyoming, Montana, and the Dakotas. NGP is a Wyoming corporation consisting of four divisions. The two divisions of NGP involved here are WGC, a natural gas distributor, and NGT, a natural gas gathering and transmission company.

Historically, WGC purchased natural gas from Williston, which it then sold to its customers. To eliminate its reliance on Williston and ensure a continuous supply of natural gas, NGP constructed a pipeline to deliver gas directly from producers to WGC. NGP did not seek approval from the PSC before construction, as required by Wyo. Stat. Ann. § 37–2–205 (LEXIS 1999).[1]

In December 1996, NGP established a new division, NGT, to "establish a transmission entity to seek PSC authority to operate intrastate transmission pipelines." NGT filed an application with the PSC for a Certificate of Public Convenience and Necessity for the operation of the pipeline. On January 6, 1997, WGC requested approval of a natural gas rate increase retroactive to March 1, 1995. Pursuant to Wyo. Stat. Ann. § 37–3–106(c)(LEXIS 1999),[2] the PSC suspended the proposed actions for six months, to allow for investigation. The PSC consolidated the applications and scheduled a public hearing on them for April 1, 1997. Williston filed a Motion to Intervene in the application proceedings, and filed a Motion to Expedite Discovery Response, both of which the PSC granted on March 21.

Williston filed a Motion to Compel Discovery and Continue Hearing on March 27. At the start of the hearing, the PSC heard arguments on that motion and elected to proceed as scheduled, reserving the option to grant a continuance if the evidence warranted it. The PSC heard testimony on April 1 and April 11. It released an Interim Order Issuing Certificate of Public Convenience and Necessity on September 8, 1997. That order granted the original requests of NGT and WGC, and ordered NGT to file "a full cost of service study based on actual data from 1997 operations."

On June 29, 1998, the PSC issued its finalized Memorandum Opinion, Findings and Order. That document confirmed the interim order, and included a recitation of the PCS's findings and conclusions, plus a summary of the evidence presented. Williston filed a timely Petition for Review in the district court. The district court, on Williston's mo-

---

1. Wyo. Stat. Ann. § 37–2–205 reads in relevant part:

   (a) No public utility shall begin construction of a line, plant, or system or of any extension of a line, plant, or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction.

2. Wyo. Stat. Ann. § 37–3–106(c) reads:

   Whenever there is filed with the commission by any public utility any application or tariff proposing a new rate or rates, the commission

may, either upon complaint or upon its own initiative, initiate an investigation, hearing, or both, concerning the lawfulness of such rate or rates. Pending its decision thereon, the commission may suspend such rate or rates, before they become effective but not for a longer initial period than six (6) months beyond the time when such rate or rates would otherwise go into effect. If the commission shall thereafter find that a longer time will be required, the commission may extend the period of suspension for an additional period or periods not exceeding in the aggregate; three (3) months.

tion, certified the case to this Court, pursuant to W.R.A.P. 12.09.

## STANDARD OF REVIEW

■ We review appeals certified to this Court pursuant to W.R.A.P. 12.09 with the same standard of review applicable in the district court. *Union Telephone Co., Inc. v. Wyo. Public Serv. Comm'n,* 907 P.2d 340, 341–42 (Wyo.1995). That standard is found in Wyo. Stat. Ann. § 16–3–114(c) (Lexis 1999), which provides the reviewing court shall:

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>
>> * * *
>>
>> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>>
>> (D) Without observance of procedure required by law; or
>>
>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Speaking specifically of the PSC, we have said:

> The PSC, in exercising its statutory powers to regulate and supervise public utilities * * * is required to give paramount consideration to the public interest, the desires of the utility being secondary. This court cannot usurp the legislative function delegated to the PSC in setting appropriate rates, but will defer to the agency discretion so long as the results are fair, reasonable, uniform and not unduly discriminatory.

*Mountain Fuel Supply Co. v. Wyo. Public Serv. Comm'n,* 662 P.2d 878, 883 (Wyo.1983) (citations omitted). In recognition of the limited nature of our review, we said, "[t]he judicial function is exhausted when we can find from the evidence a rational view for the conclusions of the PSC." *Telstar Communications, Inc. v. Rule Radiophone Serv., Inc.,* 621 P.2d 241, 246 (Wyo.1980).

## DISCUSSION

■ In its first and primary assignment of error, Williston challenges the PSC's award of a Certificate of Public Convenience and Necessity as contrary to law. Williston specifically claims NGT constructed the pipeline without PSC approval, and it is therefore illegal. There is no dispute among the parties that NGT constructed the pipeline without PSC approval. Williston argues that the PSC should therefore forever bar NGT from using its pipeline. In response, NGT argues that it was not required to obtain preconstruction approval because it was not a public utility at the time of construction as the pipeline delivered gas only to WGC and not directly to customers. Disagreeing with both, the PSC found the pipeline "should have been subject to Commission approval prior to commencement of construction," but granted the certificate nonetheless. The PSC correctly points out that Wyo. Stat. Ann. § 37–2–205 neither requires it to reject untimely applications, nor provides any penalty for them. Therefore, the PSC reasons that sanctions, if any, for untimely applications are within its own discretion. We agree, and hold that if an untimely application is acceptable in all other respects, the PSC may grant it and may impose sanctions or not, at its discretion.

To determine whether an application is, in fact, acceptable in all other respects, we turn to the three-part standard by which the PSC is to decide applications for certificates. The legislature has set forth that standard in Wyo. Stat. Ann. § 37–2–205(c) (LEXIS 1999), which provides in relevant part:

> The commission shall have power, after hearing involving **the financial ability and good faith of the applicant and the necessity of additional service in the community**, to issue said certificate, as prayed for, or to refuse to issue the same * * *.

(Emphasis added.) Therefore, we will proceed to determine whether substantial evidence was presented at the hearing to establish the financial ability of NGT, the good

faith of NGT, and the necessity of additional service.

■ This Court has previously accepted corporate financial records and the testimony of corporate officers as evidence of financial ability. *Western Radio Communications, Inc. v. Two–Way Radio Serv., Inc.,* 718 P.2d 15, 18 (Wyo.1986). In the case at hand, NGT provided the cost of service study ordered by the PSC, which included a balance sheet, income statement, statement of cash flows, statement of operating revenues, and several other documents. The controller of NGP testified that NGT would require no external financing, and that NGP has the resources to operate NGT and fund foreseeable expansion. Therefore, substantial evidence supports a conclusion that NGT has the required financial ability.

■ Showing good faith is a very different proposition from showing financial ability because good faith evades accurate measurement. This Court has not had occasion to declare precisely what "good faith" means in the context of the statute in question here. Several other states use the same three-part analysis in regulating public utilities, but none of their reported decisions define "good faith" either. *See* Idaho Code § 61–528 (Michie 1994); Ky.Rev.Stat. Ann. § 278.020 (Michie Supp.1998); Miss.Code Ann. § 77–3–13 (LEXIS Supp.1999); Tenn.Code Ann. § 65–4–202 (Michie Supp.1999); Wash. Rev.Code Ann. § 80.28.190 (West 1991).

Turning to this Court's discussions of "good faith" in other contexts, we see definitions that match what most people probably think of when they hear the term.[3] In a chattel mortgage case over a century ago, we adopted this definition of good faith: "Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an ab-

sence of all information or belief of facts which would render the transaction unconscientious." *Cone v. Ivinson,* 4 Wyo. 203, 216, 33 P. 31, 34 (Wyo.1893). Many years later, we defined good faith as:

> being honest, lawful intent, and the condition of acting without knowledge of fraud and without interest to assist in fraudulent or otherwise unlawful scheme, together with the definition set out in [*Cone* ].

*Blake v. Rupe,* 651 P.2d 1096, 1110 (Wyo. 1982), *cert. denied,* 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). In a more recent case examining the conduct of police officers we said, "Our definition of good faith is that it encompasses an honest, lawful intent, and actions taken without knowledge of fraud and without any intent to assist in any fraudulent or otherwise unlawful scheme." *Brown v. Avery,* 850 P.2d 612, 617 (Wyo. 1993) (Thomas, J., specially concurring).

NGT points to evidence of good faith in the record. The president of NGP testified at length regarding the reasons for constructing the new pipeline. He described the pipeline as his company's attempt to "control its destiny." He further explained the company had been reliant on Williston, which had lost much of its gas supply, and frequently increased its prices. Despite extensive negotiations, Williston would not decrease its rates, so NGP ultimately decided to build the pipeline to ensure a reliable supply of gas at reasonable prices.

The above explanation, says NGT, demonstrates that it acted in good faith. We agree. Williston argues, essentially, that NGT acted in bad faith by trying to improve its financial position to Williston's probable detriment. However, we see nothing unconscionable in a company trying to buy products at a better price or win over customers from a competitor. Because there is credible evidence from

---

**3.** These definitions closely track that found in one of the premier sources of legal definitions:

> Good faith is an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage, ... An honest intention to abstain from taking any uncon-

scientious advantage of another, even through technicalities of law, ... In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.

Black's Law Dictionary 693 (6th ed.1990).

which the PSC could have found good faith on the part of NGT, we need look no further.

■ Williston rephrases the third part of our standard, the necessity of additional service in the community, by contending the pipeline was unnecessary and duplicative, and PSC approval of it was not in the best interest of the public. It bases that contention on the prior existence of its own natural gas pipeline that is capable of serving WGC and had been WGC's sole source of supply. At the hearing, an officer of NGP testified the NGT pipeline would provide services previously unavailable to WGC. That officer also testified the NGT facility "was in the public interest since the customers of [WGC] would have expanded access to the natural gas market and it would greatly reduce [WGC's] historical dependence upon the rates and business decisions of Williston Basin." Williston invites us to ignore our substantial evidence standard and reevaluate the evidence. We decline that invitation because "it is well established that the weight and credibility of evidence is for the administrative agency to determine based on its expertise and experience." *Western Radio,* 718 P.2d at 20. NGT presented evidence, which the PSC found credible and persuasive, that the pipeline was not duplicative and was in the best interest of the community. Because substantial evidence supports the conclusion that NGT has satisfied the three part standard, we will not disturb the PSC's findings in that regard.

■ In its second issue, Williston claims the rates approved by the PSC are excessive, unreasonable, and not supported by substantial evidence. Williston restates, in great detail, evidence that it presented at the hearing, and asks us to conclude the PSC erred by preferring the competing evidence of

NGT. Requests for us to re-try rate cases are not new, nor is our refusal to do so. *Natural Gas Consumers v. Northern Utils. Co.,* 70 Wyo. 225, 255, 247 P.2d 767, 783 (1952). Instead, we will abide by our established practice of affirming PSC decisions that are supported by substantial evidence. *Id.* at 254, 247 P.2d at 782; *Telstar Communications,* 621 P.2d at 244-45.

In its findings and conclusions, the PSC acknowledged that the parties presented conflicting evidence about the reasonableness of the proposed rate. That evidence included an exhibit and testimony of an official of NGT, both to the effect that an even higher rate was supportable. The PSC reviewed the evidence presented at the hearing and also indicated its consideration of the cost of service study it ordered NGT to prepare. Because it is the PCS's province to evaluate the evidence, and because substantial evidence supports its findings, we hold the rate approved is neither excessive nor unreasonable.

■ In the third issue, Williston argues the PSC's Memorandum Opinion, Findings and Order does not conform to applicable statutes. The essence of Williston's contention on this issue is that the PSC did not use the prescribed format and did not support its conclusions of law with factual findings. We begin our analysis by agreeing with Williston that this was a contested case pursuant to Wyo. Stat. Ann. § 16-3-101(b)(ii) (LEXIS 1999),[4] and therefore subject to the requirements of the Wyoming Administrative Procedure Act (WAPA), including Wyo. Stat. Ann. § 16-3-110 (LEXIS 1999).[5] That statute, however, is not in perfect harmony with Wyo. Stat. Ann. § 37-2-212 (LEXIS 1999),[6] which pertains only to

---

4. Wyo. Stat. Ann. § 16-3-101(b)(ii) reads:

"Contested case" means a proceeding including but not restricted to rate making, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing but excludes designations under W.S. 9-2-1022(h)(i).

5. Wyo. Stat. Ann. § 16-3-110 reads in relevant part:

A final decision or order adverse to a party in a contested case shall be in writing or dic-

tated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

6. Wyo. Stat. Ann. § 37-2-212 reads in relevant part:

Every order of the commission shall be in writing and in cases of importance may be accompanied by an opinion setting forth in

the PSC. The word "may" in that statute makes a written explanation optional in PSC orders. In accordance with our rule that a more specific statute controls over a general one, we will give effect to the statute specific to the PSC when it conflicts with the WAPA, which applies to all state administrative agencies. *L.U. Sheep Co. v. Bd. Of County Comm'rs,* 790 P.2d 663, 674 (Wyo. 1990). Therefore, we will hold the PSC opinion to the less rigid standards prescribed in Wyo. Stat. Ann. § 37–2–212.

■ We agree with Williston that the purpose of requiring well-articulated findings and conclusions is to provide a rational basis for judicial review. *Svilar Light & Power v. Riverton Valley Elec. Ass'n.,* 355 P.2d 52, 54 (Wyo.1960); *Larsen v. Oil & Gas Conservation Comm'n,* 569 P.2d 87, 90 (Wyo.1977). Therefore, rather than delving into minutia and reversing for technical non-compliance, we will examine the PSC's decision to see whether it affords us a sufficient basis for review. *See Gore v. John,* 61 Wyo. 246, 273, 157 P.2d 552, 561 (Wyo.1945) ("[I]t is not the practice of this court to allow mere form to defeat substantial justice, or to disregard pertinent matter for want of proper labeling."); *Grams v. Environmental Quality Council,* 730 P.2d 784, 787 (Wyo.1986) ("[A]n error must be prejudicial and affect the substantial rights of the appellant to warrant reversal.").

■ The PSC's Memorandum Opinion, Findings and Order is eleven pages long and contains sections that identify the parties, trace the procedural history, summarize the applications, detail the evidence presented, and pronounce the findings of fact and conclusions of law. These sections allow the reader to understand the issues and evidence before the PSC, and its reasons for ruling as it did. This Court was able to discern which evidence was relied on and which was rejected. While we must concede the memorandum could have been more artfully written and the reasoning more explicitly stated, as a whole it is a sufficient basis for rational review. Therefore, Williston's argument on this issue is not availing.

■ In its fourth claim of error, Williston asserts the PSC's pre-hearing procedural orders deprived it of procedural due process. That contention is grounded in the PSC's refusal to grant Williston a continuance. Williston argues it needed the continuance because NGT had not fully complied with discovery requests. Without additional time, Williston reasons, it could not obtain necessary information. Without that information, it was unable to develop its case, thus depriving it of an opportunity to be heard in a meaningful manner.

■ A refusal to grant a continuance in an administrative matter is reviewed under our abuse of discretion standard. *Grams,* 730 P.2d at 788. We recently had occasion to clarify precisely what this Court means by "abuse of discretion." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). In *Vaughn* we ratified our adoption, in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986), of the following standard:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

*Vaughn,* 962 P.2d at 151. With that definition in mind, we must determine whether the PSC acted appropriately under the circumstances.

The PSC heard arguments from both sides on the continuance motion and decided to proceed with the hearing. Although Williston's arguments in favor of a continuance were cogent and well reasoned, they were not the only factors for the PSC to weigh in its decision on the motion. NGT also presented arguments, which the PSC apparently found more persuasive. One major consideration for the PSC was that the hearing had been scheduled for six weeks. Williston requested the continuance only five days before the hearing was scheduled to begin. Under the circumstances, we see no abuse of the

brief the facts on which the commission has based its order.

PSC's discretion in denying the motion for a continuance.

 In its fifth and final assignment of error, Williston claims the PSC erred in refusing to review the cost of service study prepared by NGT in response to the interim order. Williston presents no statutory or case law in support of its position, likely because there is none to be found. More accurately stated, its position is that the PSC did not draw the same conclusion from the study as did Williston, and therefore must be wrong. Its bold assertion that the PSC did not review the study is based on nothing more than diametrical opposition to the PSC's findings. This Court has made it quite clear in the past that an appellant of a PSC decision "carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences." *Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n*, 698 P.2d 627, 636 (Wyo.1985) (quoting *Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287–288, 88 L.Ed. 333 (1944)). Unsupported assertions cannot shoulder that heavy burden, and Williston must fail in this claim, as in all the others.

Because the PSC was within its discretion in granting the certificate requested by NGT, its findings were supported by substantial evidence, and the procedures followed were in accordance with applicable statutes, we affirm the final order.